THE IRON CITY NATIONAL BANK v. PEYTON & COMPANY.

Delivered January 13, 1897.

**1.  Forgery—Negligence—Handwriting—Expert Evidence.**

In a suit by a bank to recover back the amount paid on a forged check, evidence of experts that the signature to the forged instrument was very dissimilar to those upon other genuine checks of the drawer, which were also in evidence before the jury, was admissible as bearing on the question of plaintiff's negligence in paying the check.

**1.  Forged Check—Payment by Drawee.**

A bank, in accepting and paying a customer's draft, is generally held to know his signature and, if a forgery, cannot recover back the money from the party receiving it, unless such party contributed to the success of the fraud or to the mistake of fact under which the payment was made.

**3.  Same.**

Defendant, when offered in payment for goods the purported check of C. on a bank in a distant county, had inquiry made by wire of the bank, whether. C.'s check for the amount would be honored, and the answer was that it would. Two weeks later defendant delivered the goods on receipt of the check, which, later, was paid by the bank, but afterwards found to be a forgery. In a suit by the bank to recover back the amount, on the ground that defendant had thrown it off its guard by the telegram and subsequent delay, a verdict for defendant was sustained.

**4.  Same—Charge.**

See statement of case for instructions held to properly present the entire law upon the above issue.

APPEAL from the County Court of Bell County.   Tried below before Hon. JOHN M. FURMAN.

*Lauderdale & Linden*, for appellant.—The court erred in admitting in evidence the testimony of experts on handwriting as to the dissimilarity of the signature of the forged check to the genuine signature of W. P. Crownover to the checks given by him, when such genuine checks and said forged check had been offered in evidence and submitted to the jury for its inspection and comparison.   Kennedy v. Upshaw, 64 Texas, 420; Mugge v. Adams, 76 Texas, 448.

Where the payee of a forged check or draft is at all negligent in receiving draft and not detecting the forgery, he becomes liable and will be required to refund the amount thereof, notwithstanding the payor may also be negligent in not discovering the forgery, and it is the duty of the court, where this question is raised by the evidence, to so instruct the jury.   3 Am. & Eng. Ency. Law, 222-3, sec. 5; Ellis v. Ins. Co., 4 Ohio St., 628; Bank v. Bangs, 106 Mass., 441; 2 Daniel on Negotiable Instruments (3d ed.), secs. 1361, 1362, 1367, 1369, and note 4 to sec. 1366.

If the payee of a forged check or draft receives same under circumstances of suspicion and does not communicate such suspicious circumstances to the payor, the payor will be entitled to recover the amount paid by him when the forgery is discovered, and it is the duty of the court to so charge the jury.   Same authorities.

Where the payee of a forged check, before or at the time it is presented for payment, by his conduct or by express representations, misleads the payor as to the character of the checks or the person who signed same, or throws the payor off his guard and causes him to pay same without the usual care or security, the payee will be required to refund the amount so paid at the suit of the payor, and the court should so instruct the jury.    Rouvant v. Bank, 63 Texas, 610.

The sending to a national bank of a telegram saying "Will you pay W. P. Crownover's two drafts, one hundred and ten dollars each?" is a specific representation that the sender of such telegram will presently present to the party to whom it is sent, for payment, the genuine draft or drafts inquired about in such telegram, and it is the duty of the court to so instruct the jury.    Willis v. Hudson, 72 Texas, 605.

The court erred in instructing the jury that if plaintiff did not, within a reasonable time after the payment of the draft, discover and report to defendant the forgery, it could not recover, without regard to whether the defendant had by such delay been placed in a worse position than it would have been had such forgery been promptly discovered.    3 Am. & Eng. Ency. Law, 224.

*Felix Humphries*, for appellee.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of the suit made by appellant is correct, and is adopted.    It is as follows:

"Appellant, Iron City National Bank of Llano, instituted this suit against Peyton & Co., a firm composed of Lee Peyton and Charles B. Smith, doing business in Belton, Texas, under the firm name and style of Peyton & Co., to recover of them the sum of $110.45, same being the amount of a forged check drawn against appellant bank by one J. A. Crownover, who forged thereto the name of W. P. Crownover, a customer and depositor of appellant bank, and delivered to appellee in payment of the purchase price of certain goods sold and delivered by appellee to said J. A. Crownover, the forger.    Said check was endorsed by defendants and on the 27th day of April, 1895, was presented for payment by the American National Bank of Austin and paid by appellant without its discovering the forgery.    A trial of the cause had in the Justice Court of Precinct No. One, Bell County, Texas, on the 29th day of August, 1895, resulted in a judgment for appellees, Peyton & Co., from which appellant bank appealed to the County Court of Bell County, Texas, and on the 10th day of December, 1895, the cause was tried by a jury in said court and resulted in a verdict and judgment for defendant firm, and plaintiff's motion for a new trial having been overruled, it has duly prosecuted its appeal to this court."

W. P. Crownover, a farmer and stockman living in Llano County, had a deposit with the plaintiff bank in Llano town, and the bank had

been in the habit of honoring his checks from points in and outside the county. A man calling himself W. P. Crownover presented himself with his wife at the store of Peyton & Co., merchants, in Belton, Texas, and proposed to purchase of them a wagon, stove and other goods, amounting to $110.45    After he and his wife had selected the goods he proposed to execute to them his check for the amount on the plaintiff bank at Llano, stating that he had a deposit with the bank of $800.    Peyton & Co. did not know the man, and asked him if he knew any one in Belton.    He said he did not.    The man had the appearance of an ordinary farmer.    When he came to pay for the goods, the amount of which was $110.45, he proposed to give a check on the plaintiff bank.    Peyton & Co. sent Mr. Thornhill, a clerk, to the Belton National Bank with him.    He said he wanted to buy a pair of horses, and Peyton & Co. told him they would sell him the horses for $110. The Belton National Bank wired plaintiff to know if it would pay W. P. Crownover's two drafts for $110 each.    The telegram was sent April 22, 1895, and it was answered by plaintiff on the next day, "Yes," directed to the Belton National Bank.    The man, whose name was J. A. Crownover, told Peyton & Co. that he had lived in Llano County, but had moved to a point near Salado, Bell County.

One of the firm of Peyton & Co. testified that he had no reason to believe the person was misrepresenting the facts, and thought it was an honest deal, and more especially so after they got the telegram from plaintiff saying it would pay the checks of W. P. Crownover for $110 each.

Crownover did not take the goods out of the house the day of the purchase, nor until about two weeks afterwards.    He attempted to draw a check for the value of the goods when he went with Thornhill to the Belton bank, but did not do so because the amount of the goods was not then known.    He said he did not like the horses, and was going out in the country to look at a team.    He said he did not settle that day because he had lost his check-book.    He went out of town, leaving the goods in the store, and did not come back; but he had the consent of defendants to take the goods after the receipt of the telegram and the check was received.    After this, Thornhill went out to find the purchaser of the goods, and found him in the country; asked him if he intended to take the goods; he answered, certainly he did, and that if Thornhill had a check he would sign it then.    Thornhill presented him a check for the $110.45 and he signed it, signing "W. P. Crownover." The check was then presented to the Belton bank for collection.    It was sent to the American National Bank of Austin and by that bank sent to plaintiff bank, who paid it.

The check was a forgery, and the fact was not discovered by plaintiff until about two and one-half months after its payment, when W. P. Crownover, hearing something of it, came to Llano and demanded a statement of his account, and on being shown the check in question he immediately pronounced it a forgery.

The goods purchased remained in the store of Peyton & Co. three days after plaintiff had paid the check, when the forger came and carried them away. The check was paid by plaintiff on the 27th day of April, and the forgery was not discovered by plaintiff until the 8th day of July thereafter.

It was proved by experts in handwriting, having for comparison three admitted genuine checks signed by W. P. Crownover with the forged checks, that the signature of the forged check was very dissimilar to that of the genuine checks.

Crownover traded the wagon to an innocent purchaser shortly after he carried the goods away and before the forgery was discovered. The other goods were second-hand after the purchase, and defendants made no effort to recover them. The stove was then practically worthless.

Defendants did not know that the check had been paid by plaintiff when they delivered the goods and same were carried off; but the check had in fact been paid three days before the goods were taken away.

Plaintiff's contention was that it was thrown off its guard by the telegram inquiring if the two checks of W. P. Crownover for $110 each would be paid, expected to be soon presented with the checks of their customer, W. P. Crownover, and therefore did not examine the signature as closely as it would have done.

There was no representation made by defendants to plaintiff as to the identity of the drawer except the telegram sent.

After stating the issues, the court instructed the jury as follows:

"If a person have notice of any fact he is charged and held liable to the same consequences he would be if he had actual knowledge of such fact.

"A person has notice of a fact—of every fact—when he knows of the existence of any other fact, or facts, which to him suggests, or which to a person of ordinary prudence and intelligence would suggest, the existence of the fact with notice of which it is sought to charge him, in every case where a reasonably diligent inquiry and investigation of the facts so known would have led to the discovery of the existence of the fact, or facts, with which it is sought to charge him.

"If a person have notice of the existence of any fact, or facts, a reasonably intelligent and prudent investigation of which would lead to the discovery or knowledge of the existence of any other fact or facts with the knowledge of which it is sought to charge him, and he fails to make such inquiry and investigation as a man of ordinary prudence and intelligence, having due regard for the rights of other persons, ought to make, then he is guilty of negligence.

"You are further charged that a bank, in accepting and paying a check drawn by a customer, is generally held to know the signature, and if a forged check is accepted and paid the bank, as a general rule, will not be heard to assert a mistake as to the signature. But the general rule is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact

under which the payment was made. If the loss can be traced to the fault or negligence of either party, it shall be fixed upon him. In the absence of actual fault or negligence on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who has received the money with knowledge of the forgery, or who took the check under circumstances of suspicion, without proper precautions, or whose conduct has been such as to mislead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud.

"You are further charged that if a bank accepts and pays a forged check drawn on it in the name of one of its customers, in order for the bank to recover back the money, it must exercise reasonable diligence in the discovery of such forgery, and report the forgery to the party against whom it seeks to recover within a reasonable time after paying such check.

"And so in this case, if you find that the plaintiff did accept and pay a forged check, as alleged, and that said check purported to be drawn by one of plaintiff's customers, and that, believing the same to be true and genuine, the plaintiff paid the amount thereof to defendant, then, if defendants in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made, the plaintiff would not be entitled to recover in this case, and you will find for the defendants.

"But if you should find that defendants took the check in question from J. A. Crownover under circumstances of suspicion, without proper precautions, and failed to notify plaintiff of such suspicious circumstances, if any; or if you should find that defendants' representations, if any, to plaintiff, or their conduct has been such as to mislead the plaintiff, or to induce plaintiff to pay the check without scrutiny or other precautions against mistake or fraud,—then if you so find you will find for plaintiff the amount of money so paid to defendants on said check, with interest thereon at the rate of six per cent per annum from the date of such payment to the present time.

"You are further charged that the law will require the party receiving payment of a forged check to refund the amount received in payment of such forged check; if in so refunding the same he will be placed in no worse position than he was before the check was accepted and paid. And so in this case, if you believe from the evidence that the payment of such check did not cause or induce Peyton & Co. to place themselves in a worse position than they were before the check was paid, then if you so find, you will find for plaintiff, even if plaintiff might have been guilty of negligence in the premises.

"If you should find from the evidence that the defendants received the check in controversy from J. A. Crownover, and in good faith presented the same to plaintiff before the goods purchased by said Crownover were in fact actually delivered to said Crownover by defendants, and if you

further find that plaintiff, by the exercise of reasonable care and dilligence, would have discovered the forgery, but that plaintiff did not use such care and scrutiny as a person of ordinary prudence would have used under the circumstances, but paid said check to the defendants before the goods were actually delivered, and if you further find that thereby defendants were placed in a worse position than they would have been had plaintiff refused to pay said check, then if you so find, you will find for defendants.

"You are the exclusive judges of the credibility of the witnesses and the weight of the evidence."

*Opinion.*—Appellant contends that the court erred in admitting in evidence, over its objection, the testimony of two experts on handwriting as to the dissimilarity of the signature of the forged check to that of the signature of W. P. Crownover on the genuine checks drawn by him, as all the checks had been offered in evidence and submitted to the jury for their inspection.

The testimony was pertinent and proper. The testimony was that the signature of the forged instrument was very dissimilar to those of the genuine checks. Kennedy v. Upshaw, 64 Texas, 420. The signature was admitted to be a forgery, but the question was whether plaintiff was negligent in failing to discover the forgery.

The charge of the court was the law of the case and all the law of the case, clearly and fairly presented, on the issues for both sides, showing under what circumstances by the evidence the plaintiff would be entitled to recover of defendants, and when it would not, the duties imposed upon both parties, and the legal consequences of a failure to perform those duties. There was no error in the charge, and it was not error to refuse instructions asked by plaintiff.

In Rouvant v. San Antonio National Bank, 63 Texas, 612, the court say: "A bank, in accepting and paying a draft drawn by a customer, is generally held to know the signature, and, if a forged draft is accepted and paid, the bank, as a general rule, will not be heard to assert a mistake as to the signature." The court then point out certain exceptions to the general rule, and, quoting from National Bank of North America v. Bangs, 106 Mass., 444, say: "But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made. If the loss can be traced to the fault or negligence of either party, it shall be fixed upon him." The opinion then proceeds: "In the absence of actual fault or negligence on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who has received the money with knowledge of the forgery, or who took the check under circumstances of suspicion, without proper precautions, or whose conduct has been such as to mis-

lead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud."

The court below followed almost the literal language of the foregoing opinion, and it was applicable to the facts. The court's charge fully covered all the issues. See also, City Bank v. National Bank, 45 Texas, 218; 2 Daniel on Neg. Inst. (4th ed.), secs. 1654a, 1655, 1655a, 1656 and 1657; 2 Morse on Banks and Banking, sec. 463.

The court's charge presented the question of the good faith of defendants, as well as their fault or negligence in not discovering the fraud, and this was sufficient upon the subject. Bank v. Bank, 10 Vt., 141; Bank v. Bank, 30 Md., 11.

The jury, upon a fair presentation of the case by the court, returned a verdict for defendants. There was evidence sufficient to sustain the the verdict, and we can not say it was erroneous.

None of the assignments of error can be held good, and the judgment of the lower court is affirmed.

*Affirmed.*