## FIRST NAT. BANK OF WICHITA FALLS v. FIRST NAT. BANK OF BORGER et al.

### No. 3583.

Court of Civil Appeals of Texas. Amarillo.

April 1, 1931.

Rehearing Denied April 15, 1931.

J. T. Montgomery and Kilgore & Rogers, all of Wichita Falls, for appellant.

Aynesworth & Aynesworth, of Stinnett, for appellees.

RANDOLPH, J.

The plaintiff, the First National Bank of Wichita Falls, instituted this suit in the district court of Wichita county, against the de-

fendants First National Bank of Borger and the City National Bank of Wichita Falls, to recover of the said defendants money paid out by plaintiff upon a forged check, which payment was alleged to have been caused by the negligence of the defendants banks.

The case was tried by the court without a jury, and judgment was rendered that plaintiff take nothing by its suit.

The trial court filed its findings of fact and conclusions of law.

The pleadings and the evidence disclose substantially that all the parties are national banking corporations; that one W. P. Collins was a depositor in the plaintiff bank, having money on deposit subject to his check; that on the 15th of October, 1929, there was presented to the Borger bank, by a person giving the name of J. B. Schulz, a check purporting to be signed by said Collins, but which was, in fact, a forgery, for the sum of $2,250, said check being payable to H. L. Haynes or order and with the names "H. L. Haynes" and "J. B. Schulz" indorsed thereon. The Borger bank accepted the check for collection without requiring identification of said Schulz of any kind, and, without actually indorsing same in any manner, sent said check to the City National Bank of Wichita Falls as a cash item.

E. W. Wasson, assistant cashier and teller of the First National Bank of Borger, testified that he handled and accepted the check in controversy and took it for collection; that he gave J. B. Schulz credit for it with the understanding that he was not to get any money until the check was paid; that he had quite a conversation with Schulz as to his occupation and address; Schulz said he did not need any money then and would not want any until the check was paid; that he (Wasson) accepted the check himself on the 14th of October, 1929; that he had never known any person by the name of H. L. Haynes or J. B. Schulz; that the person presenting the check was not known to him or to any one else in the bank so far as he knew. That he did not know W. P. Collins, and neither did any one in the bank so far as he knew. Schulz was not introduced or identified before acceptance of the check, and no identification was required of him. The witness does not know whether the names J. B. Schulz and H. L. Haynes were assumed or not.

Wasson further testified that it was an oversight that the check was not indorsed by the First National Bank of Borger; that it is the custom for banks to indorse items of that kind sent to their corresponding banks for collection.

It appears that the Borger bank received the check on the 14th of October 1929; that one of the tellers paid to Schulz the sum of $500 on the 16th of October, 1929, and $1,750 on October 17, 1929, about 11 o'clock, a. m. Wasson gave Schulz credit on the books and he gave the bank two checks for the money. The two checks as named above were introduced in evidence. No investigation was made before the money was paid. No introduction or identification was required at that time. There was nothing in Schulz's actions to create suspicion. The check was deposited by Schulz for collection, because, as Wasson says, he did not know the maker of the check and did not know whether it was good or not. He testified: "I did not know the genuine signature of the purported maker of the check and I desired to have the First National Bank of Wichita Falls pass upon it before advancing any money. Yes, this is the custom of all banks to send the checks to the bank drawn upon either directly or indirectly for the purpose of having the genuineness of the signature of the maker passed upon."

There is no question before us but that the check purporting to be signed by W. P. Collins and drawn on the First National Bank of Wichita Falls was a forgery.

The forged check was sent by the Borger bank to its correspondent, the City National Bank of Wichita Falls, as a cash item, and was apparently received as such, but the officials of the Borger bank testified that the check was only accepted for collection, and that the sending of same as a cash item was an error.

It appears that, according to the custom of banks, when the City National Bank, as correspondent, received the check from the Borger bank, it supplied the indorsement of the Borger bank and turned the check in to the clearing house, where the First National Bank of Wichita Falls received it, and on the same day paid it off by charging it to the account of its customer, W. P. Collins. When the check reached the plaintiff, First National Bank, the officer receiving it called another official of that bank, and, on inspection of the check, the two, comparing it with the genuine signature of Collins which was on file in bank, decided it was the genuine signature of Collins, charged it to him, and remitted the money to the Borger bank.

The fact that the check was received by the Borger bank as a collection item, but was sent to the City National Bank as a cash item, is immaterial, as we view the case. In either event, it appears to us that the responsibility of the plaintiff, First National Bank of Wichita Falls, would be the same in the matter of their duty in detecting the forgery when presented to them. Neither can that bank rely on the guaranty of the Borger bank to protect it against loss, as such guaranty only covers all prior indorsements and was no voucher for the genuineness of the signature of the maker of the check.

"* * * If a drawer's name has been forged, the fact that the collecting bank has guaranteed prior endorsements does not render it liable. Much less does a simple endorsement without guaranty do so." 6 Tex. Jur., last paragraph, § 156.

But regardless of whether or not the Borger bank was negligent in failing to get an identification of Schulz and in sending the item as a cash item, the plaintiff First National Bank of Wichita Falls was guilty of negligence in accepting and paying a forged check purporting to be the check of one of its customers whose genuine signature was on file with them for their inspection. It was the paramount duty they owed the customer to pay only when his genuine signature was presented to them. When they violated this duty, whether or not they are charged with negligence as that term in its common acceptation is understood, they are guilty of negligence in law.

The Austin Court of Civil Appeals, in the case of Citizens' National Bank v. San Angelo Bank, 19 S.W.(2d) 388, 389, Associated Justice Blair speaking for that court, in an able opinion and in a case almost on all fours with the case at bar, says:

"The sole question presented is whether under these pleadings and agreed facts judgment should have been rendered for appellant as a matter of law. We think so.

"The case is settled by the following rule announced in the case of Rouvant v. San Antonio Nat. Bank, 63 Tex. 610, 612: 'A bank, in accepting and paying a draft drawn by a customer, is generally held to know the signature, and, if a forged draft is accepted and paid, the bank, as a general rule, will not be heard to assert a mistake as to the signature. City Bank v. National Bank, 45 Tex. 218; Price v. Neal, 3 Burr. 1354; Levy v. Bank of the United States, 1 Bin. (Pa.) 27.'

"This rule prevails as between banks, one of which pays out money as drawee on a forged check of its customer to another bank presenting the check for collection or to a holder in due course. 7 C. J. 695, § 423 (4); First Nat. Bank v. City Nat. Bank, 182 Mass. 130, 65 N. E. 24, 94 Am. St. Rep. 638, and note.

"Appellee admits the general rule, but seeks to bring itself within the exception thereto announced in the case of First Nat. Bank of Quitman v. Wood County (Tex. Civ. App.) 294 S. W. 324, affirmed by Commission of Appeals, 299 S. W. 856, because appellant indorsed the check 'previous indorsements guaranteed.' There it is held that, where a holder bank pays a forged check to the person presenting it without identifying him, and drawee bank pays the check without active fault or negligence in discovering the lack of genuineness of the signature of its customer at the time, being thrown off its guard by reason of the holder bank indorsing it 'previous indorsements guaranteed,' and in reliance thereon, and in reliance that holder bank exercised due care and diligence in the identification of the person to whom it paid the money on the check, the drawee bank was entitled to recover the amount paid the holder bank on the forged check. But in this case appellee neither alleged nor proved that it paid the check in question because of being thrown off its guard by reason of appellant's indorsing same 'previous indorsements guaranteed,' and in reliance thereon, nor that appellant was guilty of any negligence which induced or misled it to pay the check because of such indorsement. Nor is any fact, reason, or excuse alleged or proved why appellee paid the check without discovering the lack of genuineness of its customer's signature at the time. The burden was on appellee to so allege and prove in order to bring its case within the exception to the general rule that a drawee bank or other drawee of commercial paper is bound to know the signature of its customer. Otherwise more weight would be given to the exception than to the rule.

"Neither the case cited, nor does any case in so far as our research goes hold that a drawee bank can excuse itself from the duty to carefully examine and discover the forgery of its customer's signature to a check presented for collection by another bank or holder in due course, upon the mere allegation and proof that the check bore the customary indorsement used by banks sending checks through regular banking channels to drawee bank for collection. The fact that the check was sent for collection should indicate to a drawee bank that the sending bank was holding up payment until drawee bank had examined the check and ascertained the genuineness of the drawer's signature. The indorsement, 'Previous indorsement guaranteed,' is merely the passport for the check through regular banking channels, and is so understood by the banking business. And while Texas may go farther than most jurisdictions in modification of the common-law rule that a drawee bank or other drawee of commercial paper is bound to know the signature of its customer to a check or draft, still all the cases hold that a drawee bank paying a forged check purporting to have been drawn by its customer must allege and prove that drawer or other holder who received the money had knowledge of the forgery, or was negligent, or was a party to the forgery, before it can recover back its loss on such check. Or, as is stated by the Court of Civil Appeals in the Quitman Bank Case, supra:

" 'As a general rule the doctrine prevails that, unless the drawer of the check whose

name he forged is, by negligence or acquiescence, rightfully responsible, the drawee bank cannot charge the amount paid * * * against him. [Citing cases.] It is for the reason that a bank, in paying a check drawn by a depositor, is generally held to know the signature, * * * unless under the exception stated above.'"

This opinion of Judge Blair is supported by a copious citation and quotation of authorities.

The First National Bank of Wichita Falls, being clearly guilty of paying a forged check when it was its' duty to pay only such checks as had appended thereto the genuine signature of its maker, was guilty of negligence in law, and was estopped from claiming compensation from the Borger bank, notwithstanding said bank might have been negligent.

This is the controlling question in this case, and other assigned errors become immaterial.

We are of the opinion that the trial court did not err in leaving the appellant bank where he found it, and therefore affirm his judgment in this cause.