RAILWAY EXPRESS AGENCY *v*. BANK OF PHILADELPHIA.

(En Banc. Oct. 30, 1933.)

[150 So. 525. No. 30708.]

Watkins, Watkins & Eager, of Jackson, for appellant.

Flowers, Brown & Hester, of Jackson, for appellee.

**Ethridge, J.,** delivered opinion of the court.

The Bank of Philadelphia, Mississippi, brought suit against the Railway Express Agency, for the recovery of two hundred thirty-five dollars and one cent paid on a forged check payable to W. E. Therrell, and deposited in another bank to the credit of the Railway Express Agency, presented to the Bank of Philadelphia, and paid

by it on the belief that the signature was that of one of its customers.

The defendant, the Railway Express Agency, demurred to the declaration, which demurrer was overruled. The defendant declined to plead further, and judgment was entered in favor of the plaintiff for the amount of the check with six per cent. interest from date. Thereafter, a general issue plea was filed, and an agreed statement of facts was also filed, and the cause was tried before the circuit judge without a jury, resulting in a judgment in favor of the bank against the Railway Express Agency for the amount of the check.

It does not appear that W. E. Therrell was served or that he appeared in court.

The declaration, in substance, alleges that on or about June 6, 1929, defendants, in the court below, deposited with the Citizens' Bank of Philadelphia, Mississippi, a check for two hundred thirty-five dollars and one cent purporting to have been drawn by one O. H. Rushing in favor of W. E. Therrell; that W. E. Therrell, on June 6, 1929, and for a long time prior thereto, was the officer and agent of the Railway Express Agency at Philadelphia, Mississippi, in charge of its affairs and acting as its officer and agent, and within the scope of his employment indorsed said check in the name of the Railway Express Agency; that said Express Agency received credit therefor in the ordinary course of business; that said Citizens' Bank, acting as agent for the defendants in the court below, and relying upon the genuineness of the signature to the check, paid it and charged same to the account of O. H. Rushing, one of its depositors; and that the check remained in the bank marked paid until about July 1, 1929, when the bank sent to O. H. Rushing his canceled checks, when the forgery was discovered.

The agreed statement of facts reads as follows: "It is agreed and understood by and between Flowers, Brown and Hester, attorneys for the plaintiff, and Watkins,

Watkins and Eager, attorneys for the defendant, that the above entitled cause be tried before the circuit judge without a jury, and that final judgment be rendered accordingly, upon an agreed statement of facts. It is further agreed that if witnesses were produced and allowed to testify for both parties that it would be proven, by competent testimony, as follows: That the plaintiff would prove by competent testimony each and every allegation contained in the declaration filed by it in this cause. That the defendant would prove by competent testimony that prior to June 7, 1929, W. E. Therrell was employed by the Railway Express Agency as agent at Philadelphia, Mississippi. That on June 7, 1929, Route Agent Berry, an officer and agent of the Railway Express Agency, made a check of Therrell's account with the company, at which time a shortage was discovered, but which was afterwards made good; that among the credits, Route Agent Berry allowed Therrell was the check in controversy in this suit. That the check was deposited by the defendant in the Citizens Bank of Philadelphia, Mississippi, who, in turn, called upon the Bank of Philadelphia for payment of same. That it was duly paid to the Citizens Bank and credited to the account of this defendant. That the Bank of Philadelphia held this check marked paid until they sent the purported maker, O. H. Rushing, his monthly statement on or about July 1, 1929, and that shortly thereafter Rushing contended that the check was a forgery and his account was accordingly credited with the amount of the check, and this defendant shortly thereafter given notice. That this defendant took the draft from its agent in the usual and ordinary course of business, not knowing at the time that it was a forgery. The said check was a forgery. It is agreed and understood that the above and foregoing be made a part of the record in this case, on appeal to the Supreme Court of Mississippi, and that all the facts stated herein as having been proven are to be considered as an agreed statement of facts.''

It will be seen from the pleadings and the statement of facts that the Express Agency had no notice or knowledge of the forgery; and that it was innocent of any wrong conduct in accepting the check and giving Therrell credit therefor.

This is a case where a bank paid a check purporting to be drawn by one of its customers whose signature it was bound to know. At least, it was grave negligence for the bank to pay a check without knowing the signature of its depositor. It is the duty of banks to know the genuineness of signatures. In 5 R. C. L., p. 552, sec. 77, it is said that: "A bank is bound to know the signatures of those who deposit with it and draw checks against such deposits; and if it accepts or pays, in the usual course of business, a check whereon the signature of the drawer is a forgery, it will be estopped afterward to deny the genuineness of such signature," citing a number of authorities.

There are some exceptions to the rule, and the appellee contends that it is not bound by its paying the check, because the Railway Express Agency took the check in payment of money due it by Therrell, its agent. We do not think this contention is sound. The Express Agency took the check in the usual course of its business and gave Therrell credit therefor. Nothing, so far as the record shows, was done to charge the Express Agency with notice that the check was forged. It was not required to know, as against the paying bank, whether the signature was genuine or not. The bank was required to know whether the signature was genuine, and it could very easily have ascertained this fact by comparisons with other signatures of its depositor, O. H. Rushing. Therefore, as between the Express Agency and the appellee bank, the Express Agency appears in a more favorable position.

The rule of law that here comes into play is that, as between two innocent persons, the one who is in the best

position to protect itself should suffer the loss. In 12 A. L. R., p. 1091, it was said that: "The rule is that as between equally innocent persons the drawee who pays money on a check or draft, the signature to which is forged, cannot recover the money from the one who received it. This rule is absolutely necessary to the circulation of drafts and checks, and is based upon the presumed negligence of the drawee in failing to meet its obligation to know the signature of its correspondent. Conditions would be intolerable if the retiring of commercial paper through its payment by the drawee did not close the transaction, but it was possible at an indefinite time in the future to reopen the matter, and recover the money, if the paper proved to have been forged. No one would dare handle it, and it would pass out of use regardless of its convenience or necessity as a part of the life of business. There is nothing inequitable in such a rule. If the paper comes to the drawee in the regular course of business, and he, having the opportunity of ascertaining its character, pronounces it valid and pays it, it is not only a question of payment under mistake, but payment in neglect of the duty which the commercial law places upon him, and the result of his negligence must rest upon him. The cases which hold that if both parties are equally innocent the drawee cannot recover money paid on a forged draft are as follows:—United States v. Bank of New York, Nat. Bkg. Asso. (1914), L. R. A. 1915D, 797, 134 C. C. A. 579, 219 F. 648; Swan-Edwards Co. v. Union Sav. Bk. (1916), 17 Ga. App. 572, 87 S. E. 825; Deposit Bank v. Fayette Nat. Bank (1890), 90 Ky. 10, 7 L. R. A. 849, 13 S. W. 339; Howard v. Mississippi Valley Bank (1876), 28 La. Ann. 727, 26 Am. Rep. 105; Neal v. Coburn (1898), 92 Me. 139, 69 Am. St. Rep. 495, 42 A. 348; Dedham Nat. Bank v. Everett Nat. Bank (1901), 177 Mass. 392, 83 Am. St. Rep. 286, 59 N. E. 62; Bernheimer v. Marshall (1858), 2 Minn. 78 (Gil. 61), 72 Am. Dec. 89; Pennington County Bank v. First State

Bank (1910), 110 Minn. 263, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep. 496, 125 N. W. 119; Germania Bank v. Boutell (1895), 60 Minn. 189, 27 L. R. A. 635, 51 Am. St. Rep. 519, 62 N. W. 327; Northwestern Nat. Bk. v. Bank of Commerce (1891), 107 Mo. 402, 15 L. R. A. 102, 17 S. W. 982; State Bank v. First Nat. Bank (1910), 87 Neb. 351, 29 L. R. A. (N. S.) 100, 127 N. W. 244; First Nat. Bank v. Yost (1890), [58 Hun. 606], 34 N. Y. St. Rep. 180, 11 N. Y. S. 862; Levy v. Bank of U. S. (1802), 4 Dall. 234, 1 L. Ed. 814, 1 Bin. 27; Iron City Nat. Bank v. Peyton (1897), 15 Tex. Civ. App. 184, 39 S. W. 223, 1 Am. Neg. Rep. 695; Moody v. First Nat. Bank (1898), 19 Tex. Civ. App. 278, 46 S. W. 660; Bank of St. Albans v. Farmers' & M. Bank (1838), 10 Vt. 141, 33 Am. Dec. 188; Bank of Williamson v. McDowell County Bank (1909), 66 W. Va. 545, 36 L. R. A. (N. S.) 605, 66 S. E. 761.''

The case of Price v. Neal (1762), 3 Burr. 354, 97 Eng. Reprint, 871, 1 W. Bl. 390, 96 Eng. Reprint, 221, and the great weight of authorities in this country, have announced this principle.

In U. S. v. Chase National Bank, 252 U. S. 485, 40 S. Ct. 361, 64 L. Ed. 675, 10 A. L. R. 1401, it was held that: ''The United States as the drawee of a forged draft cannot recover as for money paid out under a mistake of fact the sum paid by it on such draft to an innocent collecting bank, even though the signature of the indorser as well as that of the drawer was forged.''

Bank checks are very largely used as currency in the business of this country, and there should be some point at which the question of the genuineness of the signature should be finally settled, so that confidence may be reposed in this medium of exchange. When a check is presented to a bank for payment, that bank is charged with the duty of knowing or ascertaining, the genuineness of the signature of its depositor. It is in a better position to know than any other person, except the person who forged the instrument, where forged, or one who had

actual knowledge of such forgery, or, at least, such clear and convincing circumstances as would impute knowledge that the signature was forged.

Where a person accepts a check in the ordinary course of business, in good faith, the bank on which it was drawn having cashed it, the bank should not be allowed to recover the money so paid. To hold that it could would unsettle the confidence reposed in commercial paper, and would, to a great extent, unsettle business transactions, and this result should be avoided if it can be reasonably done.

We think the Railway Express Agency was innocent of any knowledge of the forgery, and that it gave credit to its agent on this check is a consideration of sufficient value to support a contract. Section 2681, Code of 1930, reads as follows: "Value is any consideration sufficient to support a simple contract." And section 2682 reads: "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

We do not deem it necessary to go into any elaborate review of the authorities. They are collected in the briefs, and it would be some task to harmonize them all with true principles. In fact, they are confusing; but, when we get down to the fundamental principles involved in this case, they are not, as we believe, very difficult, and the authorities cited, we think, are sufficient to show the soundness of our conclusion. The judgment of the court below will therefore be reversed, and the cause dismissed as to the Railway Express Agency. The said W. E. Therrell not having appeared in the suit, and the record showing no service of summons, the suit, as to him, is not affected by this opinion.

Reversed and dismissed.

**Griffith, J.,** delivered dissenting opinion.

The general rule is that when the bank which is the drawee of a forged check pays the same to a bona fide holder for value, the bank cannot afterwards recover the payment. The rule does not, as shown by the statement thereof, include the payment of a check to the forger himself, nor the payment to one who knows when he presents it that it is a forgery, nor the payment to one who has such knowledge as to put him on notice or upon inquiry that the check is a forgery. To the rule as first above stated there is an exception, founded upon the general principle which is everywhere growing in favor among the courts, and its application is being extended day by day in order the better to conform our law to the dictates of simple and natural justice, which principle is that money paid by mistake may be recovered back; and the exception founded on that principle is that the bank may recover the money paid if demand is made with reasonable promptness and the payee of the check has not substantially changed his position, and would be in no worse condition if the mistake were corrected than if the bank had refused payment at the time of presentment. And the courts which refuse to recognize the exception just mentioned, concede that in so doing they must and do make an exception to the rule which permits the recovery of money paid under a mistake of fact, but justify it, as does the majority in the case here before us, on the ground of commercial necessity.

The cases which support the exception that the bank may recover the money back if demand is made with reasonable promptness and the payee of the check has not substantially changed his position, and would be in no worse condition if the mistake were corrected than if the bank had refused payment at the time of presentment, are, to give a partial list: Ellis v. Ohio Life Ins. & Trust Co., 4 Ohio St. 628, 64 Am. Dec. 610; Iron City Nat. Bank

v. Peyton, 15 Tex. Civ. App. 184, 39 S. W. 223; Canadian Bank v. Bingham, 30 Wash. 484, 71 P. 43, 60 L. R. A. 955; First Nat. Bank of Danvers v. First Nat. Bank of Salem, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; First Nat. Bank v. Ricker, 71 Ill. 439, 22 Am. Rep. 104; First Nat. Bank v. State Bank, 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294; Jones v. Miners & Merchants Bank, 144 Mo. App. 428, 128 S. W. 829; First Nat. Bank v. Bank of Wyndmere, 15 N. D. 299, 108 N. W. 546, 10 L. R. A. (N. S.) 49, 125 Am. St. Rep. 588; American Exp. Co. v. State Nat. Bank, 27 Okla. 824, 113 Pac. 711, 33 L. R. A. (N. S.) 188, the latter cases containing an elaborate discussion and the citation of many authorities. In 5 R. C. L. 559, it is said: "It is the opinion of many courts that a drawee of a check who is deceived by a forgery of a drawer's signature, may recover the payment back, unless his mistake has placed an innocent holder of the paper in a worse position than he would have been in if the discovery of the forgery had been made on presentation. Forgeries often deceive the eye of the most cautious experts; and when a bank has been so deceived, it is a harsh rule which compels it to suffer although no one has suffered by its being deceived." And all the modern texts on banking agree with the decisions which hold to that view.

Thus the stated exception is supported, not only by the most obvious considerations of morality and natural justice, but by an array of decisions and texts. Not to recognize and apply it would be to permit a holder who has just cashed a forged check, and who still remains in the bank lobby with the money in his pocket, to say to the bank, which in five minutes thereafter has discovered the forgery and has requested the return of the money, that he has the bank's money in his pocket but will keep it because the bank made a mistake and ought not to have paid it to him.

To a ruling by this court which would sanction such a

result as that just stated, and the holding of the majority here does, I must dissent. I recognize, of course, the necessity of practicable general rules and that sometimes such rules must result in hardship and injustice in particular cases. This was expressly recognized in the opinion written by me in Divelbiss v. Burns, 161 Miss. 724, 730, 138 So. 346, a negotiable instruments case. But inasmuch as an ideal society is that wherein its laws conform to pure justice and enlightened morality, our laws in their progression and advancement should be made to approach, wherever possible, and to conform, as nearly as practicably possible, to that ideal. There is no compelling commercial necessity in the proposition that a man shall take and keep his neighbor's money paid on mistake, and for which he has given nothing, and a forged check is nothing, even in a banking transaction and that neighbor a bank, when to correct the mistake will leave the person who received the money in no worse position substantially than if the payment had been originally refused; and there being no such necessity the morality and justice of the situation ought not be displaced and subverted to conserve and preserve an ancient and arbitrary rule.

**Cook, J.,** joins in this dissent.