The RIGGS NATIONAL BANK OF
WASHINGTON, D. C., etc.,
Appellant,

v.

DADE FEDERAL SAVINGS AND LOAN
ASSOCIATION OF MIAMI, etc.,
Appellee.

No. 17433.

United States Court of Appeals
Fifth Circuit.

June 30, 1959.

Rehearing Denied Aug. 3, 1959.

Leo M. Alpert, Alpert & MacArthur, Miami, Fla., for appellant.

Joseph F. Jennings, H. Reid DeJarnette, Dixon, DeJarnette, Bradford & Williams, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The Riggs National Bank of Washington, D. C., the appellant here, brought suit against Dade Federal Savings and Loan Association of Miami, the appellee here. From the complaint and from Dade Federal's answers to interrogatories propounded by the Riggs Bank it appeared that Dade Federal received a letter signed in the name of Jose Martucci enclosing a check drawn on the Riggs Bank. The check was on a customer's draft form. On the form, originally, were blanks for the date, the drawee, the payee, the amount and for the signature of the drawer or maker of the check. When received by Dade Federal all of the blanks were filled in except the space for the name of the payee which was left blank. The instrument was dated July 31, 1956, was drawn on The Riggs National Bank, Washington, D. C., in the amount of $20,000, and in the space for the maker's signature appeared the name of Margaret Lockett Bonsal. In the letter by which this instrument was sent to Dade Federal, the writer stated that he had "negotiated a check in the amount of $20,000.00 which is made out without the payee's name so as to facilitate its indorsement and I am enclosing it herewith for you to be kind enough to cash same and establish a savings account in my name." Dade Federal inserted its name with a rubber stamp in the space for the name of payee. On the back of the check Dade Federal typed an endorsement reading: "For Deposit Only to Account No. 80848." Jose Martucci and Margaret Lockett Bonsal were both strangers to Dade Federal. The check was paid by the Riggs Bank on August 23, 1956. On September 4, 1956, Dade Federal received a withdrawal slip from Martucci in the amount of $18,000 and, at his request, sent him New York exchange for that amount. Thereafter Riggs Bank notified Dade Federal that the purported signature of Mrs. Bonsal was a forgery.

In its complaint seeking recovery of the amount it had paid out on its depositor's forged check, the Riggs Bank

asserted two theories, each being set out in a separate count of the complaint. By the first theory, set forth in the first count of the complaint, it is asserted that the presentment of the forged check under the circumstances present was a representation by Dade Federal to the Riggs Bank that Dade Federal had dealt with and received the check from Mrs. Bonsal with knowledge that the bank would rely upon such representation and pay the check and with knowledge that if the bank had been apprised of the facts the check would not have been honored. The second theory of the Riggs Bank, incorporated in the second count of the complaint, is that the manner of the handling of the check by Dade Federal and its failure to inform the Riggs Bank of the circumstances rendered it guilty of negligence causing the bank to sustain a loss by the payment of the forged instrument. The complaint contains a third count claiming that there was negligence so gross, flagrant, reckless and careless as to entitle the Riggs Bank to punitive damages. Dade Federal filed a motion to dismiss the complaint on the ground that it failed to state a cause of action. The Riggs Bank propounded interrogatories which Dade Federal answered. The district court heard oral argument and gave consideration to the motion, the interrogatories, the complaint and proceedings in the cause. The district court treated the motion to dismiss as one for summary judgment as provided by Rule 12(b) Fed.Rules Civ.Proc., 28 U.S.C.A., although it did not so state. The motion to dismiss was granted and judgment was entered for Dade Federal. The Riggs Bank appealed. More than a month after the notice of appeal and designation of the record were filed, Dade Federal lodged in the office of the clerk of the district court, and the clerk marked as filed, an instrument bearing the caption "Notice of Tendering Funds into the Registry of the Court" in which it said that if the instrument was a forgery a $2,000 remaining balance to the credit of Martucci should be paid to the Riggs Bank and the sum of $2,000

was tendered into the registry of the court to be disbursed pursuant to its order. This notice is brought before us by an additional designation of Dade Federal. We are informed by the brief of the Riggs Bank that it has filed, in the district court, a motion to strike the notice. Before us Riggs Bank argues that the notice, if it means anything at all, can only mean that Dade Federal admits that it owes Riggs Bank $2,000 and, a fortiori, the dismissal of the complaint was improper.

A bank of deposit is bound, at its peril, to know the signatures of its depositors. It cannot, after the payment of a check upon which the drawer's signature is forged, recover the amount paid from a holder for value in the absence of a showing of negligence, fraud or bad faith. Price v. Neal, 3 Burr. 1354, 97 Eng.Rep. 871; President, Directors & Co. of Bank of United States v. State Bank of Georgia, 10 Wheat. 333, 23 U.S. 333, 6 L.Ed. 334; United States v. Chase National Bank, 252 U.S. 485, 40 S.Ct. 361, 64 L.Ed. 675, 10 A.L.R. 1401; 2 Fla.Law & Practice 582, Banks and Banking § 71; 4 Fla.Jur. 160, Banks and Trust Companies § 69. It has been generally held that Section 62 of the Negotiable Instruments Law, Fla.Stat.Ann. § 674.64, incorporates the common law rule of Price v. Neal. See Beutel's Brannan Negotiable Instruments, 7th Ed. 905. It is not contended and could not well be contended that Dade Federal was not a holder for value. Bland v. Fidelity Trust Co., 71 Fla. 499, 71 So. 630, L.R.A.1916F. 209; Railway Express Agency v. Bank of Philadelphia, 168 Miss. 279, 150 So. 525. The contentions that Dade Federal was guilty of fraud or of negligence may be treated together. Unless Dade Federal did something which it was under a duty not to do or refrained from doing something which it was under a duty to do, and unless its conduct was the cause of the payment of the check by the Riggs Bank, it cannot recover and the judgment should be affirmed. Central National Bank v. First & Merchants National Bank, 171 Va. 289, 198 S.E. 883;

6 Zollman, Banks and Banking, 394 et seq., § 4145.

■ The Riggs Bank contends that because the check was drawn on a customer's draft form and had an unfilled blank space for a payee it was decorated with danger signals and placed Dade Federal under a duty to investigate. We do not think that the use of a customer's draft form is of itself suggestive of forgery so as to require investigation by one to whom such a check is tendered. If, however, such be the case, then no less, and perhaps a greater, duty would be imposed upon the Riggs Bank which was in a better position than Dade Federal to determine whether there was anything so unusual about the particular item as to necessitate inquiry and investigation. Whether the omission of the name of a payee from the check when it was received by Dade Federal imposed upon it any duty of inquiry was involved in Massachusetts Bonding & Ins. Co. v. Pittsburg Pipe & Supply Co., 135 S.W.2d 818, 819, 823, decided in 1940 by the Texas Court of Civil Appeals. This is more nearly in point factually than any of the other reported cases. There it appeared that Wair desired to buy oil well drilling equipment from Futoransky who was an agent for Pittsburg Pipe & Supply Co. at a price of $1,500. Wair forged the signature of Vivian Church on a check for $2,000 drawn on the First National Bank of Longview. Wair left blank the space for the name of the payee and in this blank Futoransky wrote "cash". Futoransky and Wair went together to the bank and received payment of the check. Futoransky took $1,500 for the equipment and Wair got the balance of $500. On the discovery of the forgery the bank made restoration to the account of its depositor and assigned its cause of action to its insurer, Massachusetts Bonding & Ins. Co., which brought suit against Futoransky's principal, Pittsburg Pipe & Supply Co. The bank's assignee was permitted to recover on the ground that before filling in the blank left for the payee, Futoransky was under a duty to inquire as to the authority given by the ostensible maker to fill up the blank. In the Texas Court's opinion it was said:

"When Futoransky wrote in the word 'cash' in making the check appear to be payable to bearer he was put upon inquiry as to the authority delegated from Vivian Church to do so. It is not asserted that he made any such inquiry. The primary source of investigation would, of course, have been Vivian Church, but nothing was done in that line. The conclusion is inevitable that Futoransky was guilty of negligence as to the drawee. This negligence was a positive act of negligence. It consisted in altering the instrument so as to make it purport to show that it authorized and required the Bank to pay to him the amount called for by the check. By his own voluntary act he made the instrument a purported completed negotiable instrument. Had he pursued the course of investigation suggested by the circumstance it would have almost certainly led to the discovery of the forgery or the prevention of the consequences thereof to the Bank." Massachusetts Bonding & Ins. Co. v. Pittsburg Pipe & Supply Co., supra.

This case, says the Riggs Bank, is controlling. It states that it has found no case challenging it either directly or indirectly. It might also have said that it could find no decided case where the particular holding of the Texas case which we here consider has been followed or been given judicial approval. The holding of the case was criticized and indirectly challenged soon after it was decided in a case note published in 18 Texas Law Review 502. After some general criticism of the decision the author concludes:

"'Whether the failure to inquire of the supposed drawer as to the authority to fill in blanks constitutes negligence on the part of the purchaser as to permit recovery by the drawee has apparently not been de-

cided prior to the instant case. Before the N.I.L. there was no duty to inquire as to the authority given to fill in blanks in an instrument, Mitchell v. Culver, 7 Cow. 336 (N.Y.Sup.Ct.1827); Notes (1902) 86 Am.St.Rep. 80, 107; hence it seems the taking of such an instrument with blanks would not be an act of negligence. Sections 14 and 52(1) of the N.I.L. change the rule so that the purchaser of an instrument with blanks cannot be a holder in due course and is put on inquiry as to the authority given to fill them in. Brannan's Negotiable Instruments Law [6th Ed. 1938], § 14, p. 241. But the presence of blanks does not suggest that the drawer's name was a forgery and discovery of the forgery while inquiring as to the authority to fill in the blanks would be merely fortuitous. Obviously the plaintiff drawee, in ignorance of the existence of any blank, placed no reliance on the possibility of this chance discovery."

With this conclusion we are in accord.

 Nor do we think that the absence of the name of a payee from the instrument when it was received by the payee imposed upon it, under the circumstances, a duty to the Riggs Bank to make inquiry as to the identity of the person signing the check. The Negotiable Instruments Law provides for the filling in of blanks on an incomplete instrument. N.I.L. § 14, Fla.Stat.Ann. § 674.16. The provision of the Negotiable Instruments Law does not of itself protect Dade Federal from liability but does exculpate it from a charge of negligence in filling up the blank as directed by Martucci. We see no such suspicious circumstances as imposed a duty to inquire upon Dade Federal.

██ It is urged that in all cases, whether or not there are suspicious circumstances, one who receives a check from a stranger is not a holder in good faith unless an inquiry was made as to the identity of the presenter. Although the decisions cannot be reconciled, 62 Yale L.J. 417, 425, we think the better rule is that, in the absence of such circumstances as would put a reasonably prudent person upon inquiry, the fact that the instrument was received from a stranger does not establish bad faith. Pennington County Bank v. First State Bank, 110 Minn. 263, 125 N.W. 119, 26 L.R.A.,N.S., 849, 136 Am.St.Rep. 496. Cf. First National Bank of Wichita Falls v. First National Bank of Borger, Tex. Civ.App., 37 S.W.2d 802. The district court was correct in its determination that the Riggs Bank had not shown any ground for shifting to Dade Federal the liability which Price v. Neal casts upon drawee banks for the payment of forged checks.

Both parties cite and rely upon Capital City Bank v. Lewis State Bank, 143 Fla. 768, 197 So. 528. We do not think the decision bears upon the questions in this case. The Riggs Bank argues that Dade Federal, by its acts and conduct, became a participant in the forgery. We find nothing to sustain this position. The conclusions we have reached make it unnecessary to consider or discuss the claim of the Riggs Bank for punitive damages.

 The tender into the registry of the district court by Dade Federal of the undisbursed sum of $2,000 was ineffectual because this appeal had then been taken and the court had lost jurisdiction. But recovery of this amount should not be denied the Riggs Bank if the check is, in fact, a forgery. Otherwise Dade Federal might be unjustly enriched. Because the right of Riggs Bank to receive this amount was not in controversy either in the district court or before us, costs in both courts will be assessed against the Riggs Bank. For further appropriate proceedings the judgment of the district court is

Reversed and remanded.

HUTCHESON, Chief Judge.

I concur in the opinion but think the judgment should be affirmed without prejudice to the claim of the Riggs Bank for $2,000.