380 So.2d 1385 (1980)
The WESTERN CASUALTY AND SURETY COMPANY
v.
HONEYWELL, INC.
No. 51690.
Supreme Court of Mississippi.
February 20, 1980.
Rehearing Denied April 2, 1980.
Cox & Dunn, Vardaman S. Dunn, Jackson, for appellant.
Pope & Van Slyke, J.B. Van Slyke, Jr., Hattiesburg, for appellee.
Before SMITH, SUGG and BOWLING, JJ.
SUGG, Justice, for the Court:
This is an appeal from a final decree of the Chancery Court of Forrest County awarding Honeywell, Inc. a judgment for $7,728.00, plus interest against Western Casualty and Surety Company.
The sole question is whether a provision in a payment bond executed in compliance with section 31-5-1 Mississippi Code Annotated (1972), requiring a supplier of a subcontractor to give notice of his claim within 90 days after furnishing the last material, is against public policy because it requires notice by the supplier before the expiration of the time within which suit may be filed by the supplier under section 31-5-7 Mississippi Code Annotated (1972).
*1386 Sections 31-5-1 and 31-5-7 provide:
31-5-1. Any person entering in a formal contract with this state, any county thereof, municipality or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs shall be required before commencing same to execute the usual bond with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor. Any person who has furnished labor or materials used therein and wherefor payment has not been made shall have the right to intervene and be made a party to any action instituted on such bond and to have his rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee. If the full amount of the liability of the surety thereof is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the obligee, the remainder shall be distributed pro rata among said intervenors. The bond herein provided for may be made by any surety company authorized to do business in the State of Mississippi.
31-5-7. When suit is instituted by any of such persons on a bond, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract and not later. If the contractor quits or abandons the contract before its completion, suit may be instituted by any such person on said bond and shall be commenced within one year after such abandonment and not later. But said time for the institution of said action shall not begin to run until the obligee shall have made said final settlement or determined said abandonment and published notice thereof in some newspaper published in said county, or if there be none then in some newspaper having a general circulation therein.
This case was tried on a stipulation of facts which included the following. On February 1, 1974, Coast Accoustical Contractors, Inc., as prime contractor, entered into a contract with the Trustees of the Mississippi Gulf Coast Junior College District of Mississippi, as owner, for the construction of additions and alterations to buildings on the Perkinston Junior College Campus. The prime contractor furnished performance and payment bonds with Western Casualty as required by the owner and by section 31-5-1. The prime contractor entered into a contract with Mississippi Mechanical Contractors, Inc., as subcontractor. Under the terms of this contract the sub-contractor agreed to furnish and install certain items as a part of the construction project including, among others, temperature controls. The sub-contractor furnished a performance and payment bond with Summit Insurance Company of New York, as surety naming the prime contractor as obligee. The bond covered the work to be done by the sub-contractor on the construction project.
On February 4, 1974, the sub-contractor issued a purchase order to Honeywell for the purchase of temperature controls specified for the project for the stated price of $7,728. The temperature controls called for in the purchase order complied with the contract specifications and were installed and remained upon the project at the time suit was brought. The charge of $7,728 was a reasonable charge for the temperature controls.
The construction project was completed on November 1, 1974, and publication of the final settlement and completion of the project required by section 31-5-7 Mississippi Code Annotated (1972) was made on August 4 and 11, 1977.
The prime contractor paid the sub-contractor in full but the sub-contractor failed to pay Honeywell for the items purchased by the sub-contractor from Honeywell.
The sub-contractor's surety went into liquidation in New York. Honeywell learned of the New York liquidation in April, 1976, and was notified it could file a claim but did *1387 not file a claim in the New York liquidation. The time for filing claims expired September 28, 1976.
The payment bond executed by Western Casualty contained the following provision:
3. No suit or action shall be commenced hereunder by any claimant:
a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or from whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.
Honeywell did not have a contract with the prime contractor or with the owner in relation to the construction project but its contract was with the sub-contractor. Honeywell did not give written notice of its claim to the prime contractor (the principal in the bond), the owner, or Western Casualty, the surety within 90 days after it furnished the last material to the sub-contractor. Honeywell gave oral notice to the owner between December 1 and December 8, 1975, that it had a claim and desired to obtain a copy of the performance and payment bond. The bond was furnished and on December 16, 1975, Honeywell gave written notice of its claim to Western Casualty. Honeywell unsuccessfully attempted to collect the amount due from the sub-contractor on several occasions.
Honeywell filed suit against Western Casualty on May 12, 1978, which was within the one year limitation prescribed in section 31-5-7. Western Casualty asserted as an affirmative defense the failure of Honeywell to give written notice within 90 days after it furnished the last of the materials for which claim was made. The position of Western Casualty is that the 90 days notice provision in the payment bond is reasonable, equitable, and not against public policy or contrary to law, and compliance with the notice provisions of the bond was a condition precedent which must be complied with before the liability of Western Casualty, as surety, became fixed. Honeywell states that it is required to give notice earlier under the bond than under the statute (section 31-5-7); therefore, it contends the notice provision in the bond is against public policy because it takes away its right to sue within one year after notice of final settlement by the owner by publication. The chancellor agreed with Honeywell and held the 90 day notice provision in the payment bond was repugnant to public policy as expressed in section 31-5-7.
The 90 day notice provision contained in the payment bond is a mandatory provision in federal construction contracts under the Miller Act, 40 U.S.C. § 270b. The beneficial purposes served by the provision is expressed in United States v. Thompson Construction Corp., 273 F.2d 873 (2nd Cir.1959) as follows:
A statute which gave rights on the contractor's bond to laborers and materialmen having no contractual relations with him but which did not require timely and adequate notice to him, would lead either to double payments or to interminable delay in settlements between contractors and subcontractors to guard against these,  in either case with attendant prejudice to all concerned. (273 F.2d at 875-876)
The 90 day notice provision guards against a double payment by the general contractor and the delay which would result if the general contractor were left with no ready means of acquiring dependable *1388 knowledge that sub-contractors had not paid their suppliers or laborers, and that potential claims remained. In this case the contract was completed on November 1, 1974, publication of final settlement was not made until April, 1977, thus giving suppliers of contracts until April, 1978, to file suit. In order to protect against double payment, the prime contractor would be forced to withhold payments to his sub-contractor until the running of the statute of limitations which, in this case, would have been nearly four years. It is apparent that such procedure would cause an interminable delay in settling with sub-contractors for work performed on governmental projects in this state.
The bond in this case, was given pursuant to section 31-5-1 which requires the bond to contain the obligation "that such contractor ... shall promptly make payments to all persons supplying labor or materials therefor." Section 31-5-1 does not include a notice provision like the Miller Act covering labor or materials supplied to a sub-contractor, neither does the statute exclude a provision for such notice, but requires only that the bond extend its coverage to all persons supplying labor or materials for the project.
The prime contractor and surety may not eliminate the coverage required by section 31-5-1 in a payment bond executed pursuant thereto. Neither does the statute prohibit them from requiring suppliers of subcontractors to give reasonable notice of their claim. The 90 day notice provision applicable to the materialmen and laborers of sub-contractors is designed to do equity and protect the prime contractor from double payment.
Although Mississippi has not addressed the question presented in this case, the same question has been presented to courts in other jurisdictions having similar statutes. New York Plumbers Specialties Co., Inc. v. W.J. Barney Corp., et al., 52 A.D.2d 832, 384 N.Y.S.2d 1 (1976); R.C. Mahon Co. v. Headrich Const. Co., Inc., 69 Wis.2d 456, 230 N.W.2d 621 (1975); W.F. Thompson Const. Co., Inc., et al. v. Southeastern Palm Beach County Hospital District, 174 So.2d 410 (Fla.App. 1965); Jenkins v. Gordy, 105 Ga. App. 255, 124 S.E.2d 303 (Div. 2, 1962). These cases held that notice provisions in bonds similar to the notice provision in this bond were reasonable and not against public policy, and were a condition precedent to recovery on the bond by the materialmen of a sub-contractor. The reasoning in these cases is persuasive and we adopt the conclusions therein set forth.
Although the precise question in this case is one of first impression in this state, the principle involved was considered by this Court in Aetna Life Ins. Co. v. Walley, 174 Miss. 365, 164 So. 16 (1935). Walley was a suit by a physician on an indemnity insurance policy. Walley was sued for medical malpractice by a patient who recovered judgment against him. He filed suit against Aetna to recover money paid by him to satisfy the judgment and the expenses incurred by him in defending the suit. One of Aetna's defenses was that Walley failed to comply with clauses A, B and C of the policy. These clauses provided:
"A. Upon becoming aware of any malpractice, error or mistake, or any allegation of such malpractice, error or mistake, the Assured shall give immediate written notice thereof with the fullest information obtainable at the time to the Company, or its duly authorized agent. If claim is made on account of such malpractice, error or mistake, or allegations thereof, the Assured shall give like notice of such claim, together with full particulars. The Assured shall, at all times, render to the Company all co-operation and assistance in his power.
"Report and defense of suits.
"B. If suit is brought against the Assured to enforce a claim for damages covered by this policy, he shall immediately forward to the Company every summons or other process as soon as the same shall have been served on him, and the Company will, at its own cost, defend such suit in the name and on behalf of the Assured.

*1389 "Co-operation of Assured, Expenses.
"C. The Assured, whenever requested by the Company, shall aid in securing information and evidence, and the attendance of witnesses, and in prosecuting appeals, but the Assured shall not voluntarily assume any liability or interfere in any negotiations for settlement, or in any legal proceedings, or incur any expense or settle any claim, except at his own cost, without the written consent of the Company previously given." (174 Miss. at 372, 164 So. at 17).
Walley recovered judgment against Aetna. On appeal we reversed and rendered judgment for Aetna, stating:
The appellee is mistaken in saying that clauses A, B, and C of the policy violate section 2294 of the Code of 1930, which provides that: "The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contract stipulation whatsoever shall be absolutely null and void; the object of this statute being to make the period of limitations for the various causes of action the same for all litigants."
The notice here required in no way affects the time within which suit must be brought on a policy, or within which notice must be given of a liability claimed to have arisen thereunder. The right of the insured to recover on this policy does not arise, if at all, until the termination of a suit against him for malpractice, and the time within which the insured must sue on the policy begins when, but not until, the termination of such a suit.
These clauses of the policy relate only to things to be done before liability thereon becomes fixed, and when such is the case. Section 2294, Code of 1930, is not violated. Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887, and Mutual Life Ins. Co. v. Hebron, 166 Miss. 145, 146 So. 445. (174 Miss. at 377, 164 So. at 19-20).
In Walley we held that the notice provisions in the insurance contract did not violate the provisions of section 15-1-5 Mississippi Code Annotated (1972) (then Section 2294 Code of 1930), because the notice provisions of the policy related only to things to be done before liability became fixed.
By analogy, the same reasoning applies to the case under consideration. The 90 day notice provision in the payment bond did not limit the time that Honeywell could bring suit under section 31-5-7 but related only to things to be done by Honeywell as a supplier of a sub-contractor before Western Casualty became liable to Honeywell. Therefore, we hold the 90 day notice provision is not repugnant to public policy as expressed in sections 31-5-1 and 31-5-7.
We are also of the opinion that the familiar principle of equity that, as between innocent persons, the one who is in the best position to protect himself should suffer any loss resulting from the default of a third party, is applicable. This doctrine is well established and was expressed in First National Bank of Jackson v. Deposit Guaranty Bank, 247 Miss. 765, 156 So.2d 814 (1963) and Railway Express Agency v. Bank of Philadelphia, 168 Miss. 279, 150 So. 525 (1933).
Honeywell knew that it had not been paid and that its customer, the subcontractor, was in default. Honeywell could easily have given notice of this default and thereby prevented loss to anyone, but Honeywell chose to remain silent and continue its efforts to collect the bill from its customer without any warning to the owner, the prime contractor, or the surety that anyone else would be called on to pay the bill until after the sub-contractor had been paid in full. The prime contractor, the owner and the surety were not aware that Honeywell had an unpaid bill. Honeywell and its sub-contractor alone knew that it had not been paid. If Honeywell had given notice, the prime contractor would have been able to deduct any money due its sub-contractor, pay the bill, and thereby prevent loss to anyone. Honeywell was in the best position to protect itself; therefore, under the doctrine above noted, should be the one to bear the loss.
*1390 We hold the 90 day notice provision was reasonable, it constitutes a necessary condition precedent to recovery by Honeywell, and it does not violate public policy as expressed in our statutes.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.