BERGSTROM v. RITZ-CARLTON RESTAURANT & HOTEL CO.

(Supreme Court, Appellate Division, First Department.   March 10, 1916.)

1. BILLS AND NOTES ☞341—"HOLDER IN DUE COURSE"—CHARACTER OF PAYEE AS SUCH—STATUTE.

Under Negotiable Instruments Law (Laws 1909, c. 43; Consol. Laws, c. 38) § 91, defining a "holder in due course," a hotel company, which without notice that the instrument was a forgery, cashed the check of the wife of its customer, payable to its own order, presented to its cashier by an employé of the apartment house where the customer and wife lived, with the statement that the wife wished the cash on the check, was a holder in due course, since the payee of an instrument, may be such.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 829; Dec. Dig. ☞341.

For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

2. BANKS AND BANKING ☞147(2)—CASHING FORGED CHECK—RECOVERY—STATUTE.

Under Negotiable Instruments Law, § 91, prescribing the conditions of being a holder in due course, where a hotel company, without knowledge that the instrument was a forgery, cashed the check of the wife of its customer to its own order, presented to its cashier by an employé of the apartment house where the wife and customer lived, with the statement that the wife wished the cash on the check and was waiting for it, and such check was paid by the wife's bankers, her husband's firm, when presented by the hotel company's bank, such bankers, the drawees of the check, had no cause of action against the hotel company, since the latter was a holder in due course for value, and within the protection of the rule that the acceptor or payor of a check or bill to which the drawer's name has been forged is bound by his act.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 449, 450; Dec. Dig. ☞147(2).]

3. BILLS AND NOTES ☞377—PAYMENT OF FORGED CHECK—RECOVERY BY DRAWER.

One in whose name a check was forged, and paid by her bankers on presentment by the hotel company, which cashed it, had no cause of action against the hotel company, having her right of recovery against her bankers, so that she sustained no loss.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 952; Dec. Dig. ☞377.]

Action by Charles R. Bergstrom against the Ritz-Carlton Restaurant & Hotel Company.   On submission of controversy.   Judgment directed for defendant.

Argued before CLARKE, P. J., and DOWLING, SMITH, PAGE, and DAVIS, JJ.

Oscar B. Bergstrom, of New York City, for plaintiff.
Hugh M. Hewson, of New York City, for defendant.

DOWLING, J.   Plaintiff sues as assignee of Eleanor Bergstrom and of Bergstrom & Co., a firm composed of Oscar B. Bergstrom and Harry Taylor, private bankers.   Eleanor Bergstrom is the wife of Oscar B. Bergstrom, and on November 1, 1912, they were residing in apartments in Carlton House, an apartment hotel at Forty-Seventh

street and Madison avenue, New York City. Defendant operates the Ritz-Carlton Hotel, at Forty-Sixth street and Madison avenue, adjoining Carlton House, and occupants of the latter may order meals from the former. Eleanor Bergstrom was known to defendant, and her husband had an account with it. On the evening of the 1st day of November, 1912, a check in the sum of $300 on a printed form of check of said Bergstrom & Co., indorsed by one G. W. Freund, then an employé of the Carlton House Company, bearing the name of Eleanor Bergstrom as drawer, and payable to the order of the Ritz-Carlton Restaurant & Hotel Company, was presented to the cashier of the Ritz-Carlton Hotel by an employé of the Carlton House, with the statement that Mrs. Bergstrom wished the cash on the check, and that she was waiting for it in the Carlton House. The defendant's cashier then cashed the check and paid the sum of $300 to the party presenting it. Defendant deposited the check in its bank, and on the 6th day of November,. 1912, it was presented to Bergstrom & Co. for payment and was paid. On presentation of said check the attention of Oscar B. Bergstrom was called privately by his cashier to the fact that the signature of the drawer did not appear to be authentic; but he, after examining the check, ordered it paid, saying:

"It is payable to the Ritz-Carlton, and no doubt is given for the November rent of our apartment."

Bergstrom's lease was with the Carlton House Company, and the monthly rental of their apartment was $300. The $300 paid by Bergstrom & Co. on presentation of the check in due course was placed to the bank credit of defendant. In fact, the signature of Mrs. Bergstrom to the check and her indorsement thereon were forgeries, and it was drawn without her knowledge or consent. She received no part of the money paid thereon, nor did any one on her account, and she had no knowledge of any of the circumstances attending the drawing, presentation, or cashing of the check. On December 10, 1912, her bank book with Bergstrom & Co. was balanced and her vouchers returned, including the paid check in question, when she discovered the forgery and thereupon notified her bankers thereof. Freund, whose name appears on the back of the check drew his pay and left the employ of the Carlton House Company before defendant was notified of the forgery, and he has not since been found, despite diligent search. Demand has been made on defendant for the return of the $300, which has been refused.

Defendant relies upon the principle enunciated in Price v. Neal, 3 Burrows, 1354, and reiterated in National Park Bank v. Fourth National Bank, 46 N. Y. 77, 7 Am. Rep. 310, where it was stated as follows:

"For more than a century it has been held and decided without question that it is incumbent upon the drawee of a bill to be satisfied that the signature of the drawer is genuine; that he is presumed to know the handwriting of his correspondent, and, if he accepts or pays a bill to which the drawer's name has been forged, he is bound by the act, and can neither repudiate the acceptance nor recover the money paid. The doctrine was broached by Lord Raymond in Jenys v. Fawler, 2 Strange, 946, the Chief Justice strongly inclining to the opinion that even actual proof of forgery of the name of the

drawer would not excuse the defendants against their acceptance. In 1762 the principle was flatly and distinctly decided by the Court of King's Bench in the leading case of Price v. Neal, 3 Burrows, 1354, which was an action to recover money paid by the drawee to the holder of a forged bill. Lord Mansfield stopped the counsel for the defendant, saying that it was one of those cases that never could be made plainer by argument; that it was incumbent on the plaintiff to be satisfied that the bill drawn upon him was the drawer's hand before he accepted and paid it, but it was not incumbent for the defendant to inquire into it. This case has been followed, and the doctrine applied, almost without question or criticism, in an unbroken series of cases from that time to this, and it has been distinctly approved in very many cases which have not been within the precise range of a principle decided. See Archer v. Bank of England, 2 Doug. 639; Smith v. Mercer, 6 Taunt. 76; Wilkinson v. Johnson, 3 B. & C. 428; Cook v. Masterman, 7 B. & C. 902; Cooper v. Meyer, 10 B. & C. 468; Saunderson v. Coleman, 4 M. & G. 209; Smith v. Chester, 1 D. & E. R. 655; Bass v. Clive, 4 M. & S. 15; Bank of Commerce v. Union Bank, 3 Comstock (3 N. Y.) 230; Goddard v. Merchant's Bank, 4 Comstock (4 N. Y.) 149; Canal Bank v. Bank of Albany, 1 Hill, 287. Cases have been distinguished from Price v. Neal, and its applicability to a transfer of a forged instrument, between persons not parties to it, has not been extended to forgeries of indorsements or handwriting of parties to negotiable instruments, other than the drawer. But, as applied to the case of a bill to which the signature of the drawer is forged, accepted or paid by the drawee, its authority has been uniformly and fully sustained, and the rule extends as well to the case of a bill paid upon presentment as to one accepted and afterwards paid. Bank of St. Albans v. Farmers' & Mechanics' Bank, 10 Vt. 141, 33 Am. Dec. 188; Levy v. Bank of the U. S., 4 Dall. 234, 1 L. Ed. 814; Bank of U. S. v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334; Young v. Adams, 6 Mass. 182; Gloucester Bank v. Bank of Salem, 17 Mass. 41. A rule so well established and so firmly rooted and grounded in the jurisprudence of the country ought not to be overruled or disregarded."

See Daniel on Negotiable Instruments (6th Ed.) §§ 1359, 1360.

Plaintiff admits that this rule of law applies to the case of a holder in due course and for value, but claims that, defendant being a party to the check itself, and it becoming commercial paper only after defendant had indorsed it and put it in circulation, defendant cannot stand in the position of a purchaser of commercial paper in due course. To support this contention plaintiff relies on National Bank v. Bangs, 106 Mass. 441, 8 Am. Rep. 349, which held that the responsibility of the drawee, who pays a forged check, for the genuineness of the drawer's signature, is absolute only in favor of one who has not, by his own fault or negligence, contributed to the success of the fraud or to mislead the drawee; and if the payee took the check, drawn payable to his order, from a stranger or other third person, without inquiry, although in good faith and for value, and gave it currency and credit before receiving payment of it, the drawee might recover back the money paid. Of course, the reasoning of that case does not apply to the case at bar, where the member of the drawee firm who honored the check was the husband of the drawee. His attention was called to the apparent forgery, but he exercised his own judgment as to the genuineness of his wife's signature and indorsement, not relying upon or being deceived by defendant's indorsement as payee. Nor is the other case relied on by plaintiff (Title Guarantee & Trust Co. v. Haven, 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. [N. S.] 1308, 17 Ann. Cas. 1131) authority in her favor, it holding that:

"The rule, therefore, that he who accepts a negotiable instrument to which the drawer's name is forged is bound by the act, and can neither repudiate the acceptance nor recover the money paid, has no application in behalf of one who has acquired the paper, in the absence of any consideration whatever therefor either present or past."

In the case at bar defendant paid full consideration for the check. [1] In any event the defendant was a holder of this check in due course under the Negotiable Instruments Law (chapter 43, Laws of 1909). Section 91 thereof provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Defendant's course answers each of these requirements, and it is therefore a holder in due course, and comes within the general rule followed with practical unanimity ever since Price v. Neal, supra. That the payee of a check may be a holder in due course if he complies with the requirements of the Negotiable Instruments Law has been held, among other cases, in Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 Am. St. Rep. 426, Thorpe v. White, 188 Mass. 333, 74 N. E. 592, and Brown v. Brown, 91 Misc. Rep. 220, 154 N. Y. Supp. 1098.

[2, 3] It follows that plaintiff has no cause of action as assignee of the claim of Bergstrom & Co., the drawees of the check, nor has he any better standing as assignee of the claim of Mrs. Bergstrom, for she has sustained no loss, having her right of recovery of the $300 in question against Bergstrom & Co.; and neither Freund, who presumably profited by the forgery, nor any other person concerned in the transaction by which the money was obtained from the defendant, or from the drawees, was her agent, nor has she ever ratified their acts.

Judgment is therefore directed in favor of the defendant, with costs. All concur.