UNITED STATES NATIONAL BANK OF OMAHA, APPELLANT, v. DUNBAR STATE BANK ET AL., APPELLEES.

FILED JUNE 17, 1929. No. 26686.

*Morsman & Maxwell* and *Paul Jessen,* for appellant.

*C. M. Skiles, I. D. Beynon* and *Edwin Moran, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and RAPER, District Judge.

ROSE, J.

As this cause was presented to the trial court it was a suit in equity by the United States National Bank of Omaha, plaintiff, against the Dunbar State Bank, and its receiver, defendants, to establish a claim for a deposit. The claim was contested by defendants. Upon a trial of the issues raised by the pleadings the suit was dismissed. Plaintiff appealed.

The controversy grew out of transactions involving a forged note for $5,000, dated at Dunbar, November 20, 1926, payable to Thomas Murray at the Dunbar State Bank May 20, 1927, with interest at 7 per cent. per annum, and bearing the name "Henry Kasbohm" as maker. The note was indorsed on the back as follows: "Pay to the order of United States Natl. Bank. Thomas Murray." The signature of the indorser was genuine and he was then president and managing officer of the Dunbar State Bank, a corporation engaged in general banking at the time. As admitted in the answer of defendants and as shown by undisputed evidence the note was a forgery. For six years or longer the United

States National Bank, plaintiff, was a correspondent of the Dunbar State Bank and carried for the latter a deposit account against which drafts and checks were drawn.

November 19, 1926, the Dunbar State Bank, under its own name, using what is called a "remittance letter," addressed plaintiff and to it mailed the forged Kasbohm note for $5,000 with the written request: "For discount." The same day the Dunbar State Bank also mailed to plaintiff for discount the genuine note of H. S. Baker for $3,000. These notes were discounted by plaintiff and in its bank books the deposit account of the Dunbar State Bank was credited with $5,018.90 for the forged note and with $3,011.33 for the Baker note or with $8,030.23 in all. Though each of the notes bore interest at 7 per cent. per annum, they were discounted at the rate of 6 per cent. The Dunbar State Bank's profit on the discounting transaction, based on the difference in the rates of interest, was $18.90 on the forged note. The deposits for the proceeds of the two notes were entered on plaintiff's books November 20, 1926. On that date plaintiff wrote and the Dunbar State Bank subsequently received a letter containing the following statement:

"We credit your account with $8,030.23 covering notes of Henry Kasbohm and H. S. Baker, as per the following statement:

| | | |
|---|---|---|
| Note—Henry Kasbohm due 5-20-27 | $5,000.00 | |
| Int. 6 mos. at 7% | 175.00 | |
| | $5,175.00 | |
| Disc. 181 days at 6% | 156.10 | |
| | | $5,018.90 |
| Note—H. S. Baker due 5-20-27 | $3,000.00 | |
| Int. 6 mos. at 7% | 105.00 | |
| | $3,105.00 | |
| Disc. 181 days at 6% | 93.67 | |
| | | $3,011.33 |
| We credit | | $8,030.23" |

The Dunbar State Bank accepted these credits as shown by an entry on its journal, disclosing an item of $8,030.23— the sum of the proceeds of the two notes including the profit arising from the discounting of the forged note. It procured these proceeds by means of drafts on the deposit account described and never restored to plaintiff the money it feloniously procured by uttering and negotiating the forged note. After the present suit was brought a receiver was appointed to wind up the affairs of the Dunbar State Bank on the ground of insolvency. Among the papers that fell into his hands was a deposit slip of the Dunbar State Bank, noting a deposit therein in favor of "Thomas Murray, Special," for $5,000 November 19, 1926, the date of the remittance letter inclosing the forged note received by plaintiff November 20, 1926. In addition to this deposit slip, the depositors' ledger of the Dunbar State Bank contained the entry of a deposit for $5,000 November 22, 1926, as the "Thomas Murray, Special," after it had received notice that it had been credited by plaintiff with the proceeds of the forged note. Another entry included $18.90, the amount of the profit arising from the difference between the rate of interest on the forged note and the rate at which it was discounted.

Plaintiff insists that it traced the proceeds of the forged note into the Dunbar State Bank as a deposit recoverable as such in the present suit.

Since the name of Dunbar State Bank does not appear on the forged instrument, the receiver invokes the principle that "One whose name nowhere appears on a negotiable promissory note is not generally chargeable as an indorser," citing *Norfolk Nat. Bank v. First Nat. Bank of Bristow*, 114 Neb. 560. The present suit is not an action to enforce a liability on the forged note. It was tendered back. The principle quoted does not defeat the cause of action based on the plea that the Dunbar State Bank uttered and knowingly used the forged note to deceive plaintiff into parting with $5,000 without any consideration whatever.

The receiver contends further that Murray individually

caused the discounting of the forged note and dissipated the proceeds thereof by means of drafts and checks and that the Dunbar State Bank was without notice of, or responsibility for, such acts. The evidence shows conclusively that the transactions resulting in the discounting of the forged note were conducted in the name of the Dunbar State Bank and that it received the proceeds in the regular course of business between the two banks.

The receiver also challenged the sufficiency of the evidence to establish the claim that the forged note and the proceeds thereof created the fund comprising the deposit in controversy. The Dunbar State Bank was wrecked while under the management of Murray who acted for it in its name in uttering the forged note; in disposing of it as genuine; in having it discounted; in procuring credit in the bank of plaintiff for the proceeds in the form of a deposit; in withdrawing the money; in taking credit for the discounting profit of $18.90; in making the books of the Dunbar State Bank show a credit in favor of "Thomas Murray, Special," for $5,000, an amount equal to the face of the forged note.

No banker would forge or accept and knowingly utter a forged note without attempting to devise some means of concealing his crime and preventing detection. The searcher for the lost fund, after learning that he had been deliberately swindled, would not expect to find in the account books of the swindler an honest entry disclosing the truth in direct terms. The devious trail of iniquity must be traced through circumstances. The business under consideration was obviously a transaction for "collection and credit." As already stated, Murray was the president and managing officer. As such he knew the established course of business between the two banks. The deposit slip indicated the deposit of $5,000 under the heading: "Deposited with the Dunbar State Bank, Dunbar, Nebraska, by Thomas Murray, Special." This did not make the forged note an asset of the Dunbar State Bank. That note did not appear in the note-case. Neither Murray nor the Dunbar

State Bank paid anything for it. There was nothing to show an investment in the forged note. With guilty knowledge that it was a forgery the Dunbar State Bank formally took it "for collection and credit," presented it to plaintiff as genuine and thus deceitfully and fraudulently negotiated it at its face value and collected the proceeds which in the equivalent of gold went into the till of the Dunbar State Bank. The entry on the depositors' ledger November 22, 1926, crediting "Thomas Murray, Special," with $5,000, in connection with all the circumstances, so shows. The Dunbar State Bank already had the proceeds with Murray in control. Without changing the actual possession of the proceeds they were a general deposit falsely entered as the "Thomas Murray, Special." This entry on the deposit ledger was not an honest entry for a "special deposit"— property to be returned in the exact form received. The real deposit of the $5,000 was subject to check as shown by the general deposit ledger. To Murray and the Dunbar State Bank the ledger entry not only identified the proceeds of the forged note but it was well calculated to mislead a searcher for the fund. These proceeds had not been checked out when the receiver took charge and they still belong to plaintiff. The receiver and the bank guaranty fund have no better defense than the Dunbar State Bank.

It is the proper inference from the books and memoranda of both banks, from the dates and items, from the correspondence, and from all the circumstances that the deposit entered on the deposit ledger November 22, 1926, had its source in the proceeds of the forged note. When all the details are impartially considered they identify the deposit credited to "Thomas Murray, Special" as plaintiff's fund. No other item was so identified. By means of expert testimony, however, an attempt was made to show that the special deposit might have been the proceeds of another 5,000-dollar note, but that view of the evidence is not substantiated by the record. The note in that instance was genuine and the circumstances preclude such an inference.

The conclusion is that this deposit of $5,000 November

22, 1926, was the fund feloniously procured from plaintiff by means of the forged note, and that it was never checked out of the Dunbar State Bank or legally withdrawn, though the receiver in good faith attempted to apply it on outstanding obligations of Murray. Judgment should have been entered against the receiver for plaintiff's claim, making it a charge against the bank guaranty fund. For the purposes of such a decree the judgment of the district court is reversed and the cause remanded.

REVERSED.

Note—See Banks and Banking, 7 C. J. 530 n. 71, 663 n. 56—Bills and Notes, 8 C. J. 61 n. 60.