FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff, vs. PEOPLES EXCHANGE BANK OF THORP, Defendant and Appellant: STATE BANK OF ELKHORN, Interpleaded Defendant and Respondent.

*June 2—June 28, 1955.*

416

For the appellant there was a brief by *Willis E. Donley,* and oral argument by *Mr. Donley* and *Mr. R. F. Muza,* both of Menomonie.

For the respondent there was a brief and oral argument by *H. G. Haight* of Neillsville.

MARTIN, J. Appellant relies on *Evenson v. Waukesha Nat. Bank* (1926), 189 Wis. 170, 207 N. W. 415. In that case two certificates of deposit issued to Evenson were stolen, indorsed by the thief and deposited to his account in the defendant Waukesha National Bank. Plaintiff, the true owner of the certificates, brought action against the defendant bank, which interpleaded the two issuing banks. It was held that as to the plaintiff, defendant had no defense since it unlawfully converted his certificates to its own use. As to the issuing banks, it was held that the defendant became a guarantor of the indorsement and even if there was negligence on the part of the issuing banks, the negligence of the defendant in accepting the forged indorsement without any proof of identity was first in point of time and more culpable.

It is appellant's argument that the Elkhorn bank is in the same position as the Waukesha bank in that case. We cannot agree. The certificates in the *Evenson Case* were genuine instruments. It was the guaranty of the indorsement that the issuing banks relied upon in cashing them. The check here was complete and regular on its face and, so far as the Elkhorn bank was concerned, it had no notice of any infirmity in it or any defect in the title of the person cashing it, and took it in the usual course of business. But since the check was in fact a spurious instrument, the guaranty of the indorsements thereon could not be relied upon by the drawee

bank as vouching for the genuineness of the check itself—a fact which the drawee was best able to determine.

The general rule is:

"In determining the liability of a collecting bank to refund money collected on a forged check, an indorsement guaranteeing prior indorsements is no voucher of the genuineness of the signature of the maker." 121 A. L. R. 1060.

At page 1062 of the same reports it is pointed out that while the Negotiable Instruments Act provides that every indorser who indorses without qualification warrants to all subsequent holders in due course that the instrument is genuine, the drawee bank is not a holder in due course within the meaning of the act.

Sec. 220.15 (4) (b), Stats., provides that an indorsement such as here involved—

". . . shall constitute a guaranty by the indorser to all subsequent holders and to the drawee or payor of the genuineness of and the authority to make prior indorsements and also to save the drawee or payor harmless in the event any prior indorsement appearing thereon is defective or irregular in any respect unless such indorsement is coupled with appropriate words disclaiming such liability as guarantor."

The statute protects the drawee so far as defective or irregular indorsements are concerned but does not make the indorser the guarantor of the drawer's signature.

There has been some conflict in the authorities on the question of the drawee's right to recover when both the signature and the indorsement are forged. As stated in 2 Paton's Digest of Legal Opinions, Forged Paper, p. 1869, sec. 7:1:

"Where a drawee bank has paid a check on which the drawer's signature and the payee's indorsement have been forged, the right of the drawee bank to recover the amount so paid depends upon which of two principles is applied by the court. Under one principle, a drawee bank is precluded from recovering money paid on a check bearing a forged

drawer's signature, on the ground that the drawee is presumed to know its depositor's signature. . . . Under the other rule, a drawee bank may recover money paid on a check bearing a forged payee's indorsement. . . . The more recent decisions apply the first principle and hold that a forgery of the drawer's signature renders the instrument invalid from its inception, and that the drawee bank may not recover, even though the payee's indorsement is forged."

Paton then quotes from the decision in *First Nat. Bank v. United States Nat. Bank* (1921), 100 Or. 264, 296, 197 Pac. 547, 558, as follows:

" 'But the rule which permits a drawee to recover payment made on a forged indorsement is not available to the plaintiff, because the signature of the drawer was forged and the instrument was never at any time valid, but from the very beginning was an invalid order in its entirety. The plaintiff did not pay on a genuine instrument bearing a forged indorsement; but payment was made on a paper to which the name of the drawer was forged, and, since the plaintiff is bound to know the signature of the drawer, it paid at its peril.' "

It is this rule that was applied in *Fidelity & Casualty Co. v. Planenscheck* (1930), 200 Wis. 304, 309, 227 N. W. 387, upon which the trial court based its decision in the instant case. It was there held:

"The cashing of a check by a bank upon which it is drawn effectually closes the transaction, retires the check, and discharges the liability of all parties thereto. . . . This rule places upon the banker, he who is in the best position to discharge it, the burden of discovering the forgery, relieves prior parties of a contingent responsibility, effectually cancels and retires the check, and converts it into a mere voucher."

We adhere to the rule there applied.
*By the Court.*—Judgment affirmed.