FIRST NATIONAL BANK OF JACKSON, MISSISSIPPI
*v.* DEPOSIT GUARANTY BANK & TRUST COMPANY

No. 42755 October 21, 1963 156 So. 2d 814

*Watkins & Eager,* Jackson, for appellant.

*Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellee and cross-appellant.

768

Rodgers, J.

This suit originated in the Circuit Court of the First Judicial District of Hinds County, Mississippi, in which the Deposit Guaranty Bank & Trust Company filed a declaration against the First National Bank of Jackson, Mississippi.

The declaration is in two counts and is based upon the claim for the recovery of money paid to First National Bank of Jackson (hereafter called First National), on two forged checks drawn on Deposit Guaranty Bank & Trust Company (hereafter called Deposit Guaranty). The answer filed by First National set out distinct defenses, including estoppel to sue after payment.

Issue was joined by plaintiff on the defenses set out in the answer. A motion to strike certain parts of the answer was overruled. A jury trial was waived, testimony was introduced, and when both sides had rested, the trial judge dictated his opinion and entered a judgment in favor of plaintiff, Deposit Guaranty on Count One of the declaration for the recovery of payment of the check in the sum of $4,200. He found in favor of defendant, First National, on Count Two of the declaration for the loss of $3,200 on the second forged check.

The declaration in both counts and the testimony show that there were two distinct transactions growing out of the negotiation of two forged checks under the following circumstances:

On March 2, 1960, a "presentable looking" man, "clean and decently clad," drove an automobile up to the "drive-in teller" cage in the garage area of the First National, and presented Miss Mary Dell Miller, the teller, a printed check of Hyde Construction Company. It was dated February 29, 1960, and was payable to the order of J. C. McBeath. The check was drawn on Deposit Guaranty Bank & Trust Company for $12,761.32, and apparently signed by Rex Carter, which

was written under the printed name of Hyde Construction Company. The name of the payee, J. C. McBeath, was also written on the back of the check in the form of an endorsement at the time the check was presented to the teller. A deposit slip was already made out in the name of McBeath, Inc., "Less cash of $4,200," making a net amount of $8,561.32 to be deposited to the account of McBeath, Inc. The teller questioned the person presenting the deposit slip, but did not require proof of his identity although she did not personally know J. C. McBeath. She knew about the McBeath account in the First National and she knew about the business of J. C. McBeath. She disbursed $4,200 cash to the person presenting the check. Thereafter, this check passed through the Jackson Clearing House and was paid by the drawee bank, Deposit Guaranty. These forgeries were not discovered until shortly after the bank statements were mailed out on March, 31, 1960. Mr. J. C. McBeath notified Deposit Guaranty that the foregoing and hereafter described checks were forgeries.

On March 21, 1960, the above-described George M. Brown again appeared at the same teller's cage and presented a check, purportedly drawn by Hyde Construction Company by Rex Carter on Deposit Guaranty, payable to J. C. McBeath, dated March 15, 1960, in the amount of $8,609.21. A deposit slip, already made out, was also presented to the teller indicating a deposit of $5,409.21 to the account of McBeath, Inc., less $3,200 cash. This sum was disbursed to the man later discovered to be George M. Brown. The check was also a forgery, not only of the name of the maker but also the endorsement of the payee. This check also cleared through the Jackson Clearing House and was paid by the Deposit Guaranty, and was charged to the account of Hyde Construction Company. The second check constituted an overdraft on the Hyde Construction Com-

pany's account, and was approved for payment by an officer of the bank before it was paid.

It was admitted that both checks were received and paid by the Deposit Guaranty; both checks were forgeries, and that the First National endorsed both checks with a rubber stamp which read as follows: "Pay to order of any bank or trust company, prior endorsements guaranteed. First National Bank of Jackson, Jackson, Mississippi." The money deposited to the account of J. C. McBeath in the sum of $13,970.53 in the First National Bank was returned to Deposit Guaranty by agreement of J. C. McBeath on April 7, 1960.

Appellant argues on appeal that the issue here involved has been settled in its favor in Railway Express Agency v. Bank of Philadelphia, 168 Miss. 279, 150 So. 525.

The learned trial judge was of the opinion that the case of the Railway Express Agency was applicable to the facts here involved, but declined to follow it, being impelled by the belief that the rule announced in that case should be reappraised. Appellant argues that no exception should be engrafted on the rule. On the other hand, appellee agrees with the rule but insists that there are certain exceptions under modern authorities which are applicable to the facts here. It is argued that the drawee bank may recover from the collecting bank or persons to whom payment is made when there is knowledge on the part of the holder that the instrument is a forgery before loss occurs; or when the holder has information which, if pursued, would lead to the discovery of the forgery before the forged check is purchased; or when negligence of purchasing holder contributed to the loss on the forged check.

In the instant case appellee insists that it should recover the loss from the collecting bank, appellant here, because the teller for First National was negligent in failing to ascertain and determine the identity of the

person who presented the checks here involved. Further, that appellant did not require the unknown and unidentified person presenting the check to endorse them, and that such bank was negligent in receiving funds for an account for which it was not endorsed.

## I

In Railway Express Agency v. Bank of Philadelphia, supra, above referred to, this Court adopted the doctrine promulgated in Price v. Neal, 3 Burr. 354 (Eng. 1762), 97 Eng. Reprint 871, 1 W. Bl. 390, 96 Eng. Reprint 221. In this ancient English case, one Lee forged the signature of one Sutton on two bills of exchange, and defendant Neal collected these drafts from the plaintiff. Price, acting innocently and without privity or suspicion, paid over the money to Neal. An action was brought to recover the money, as money paid under a mistake of facts. Lord Mansfield held that it was incumbent on the plaintiff to be satisfied that the bill drawn upon him was over the signature of the drawer before he accepted and paid it. The Court also held that it was not incumbent on defendant to inquire as to whether or not the signature on the bills was genuine, that if there were negligence or fraud, it was the negligence of the plaintiff and not of the defendant. The action was dismissed.

██ █ Thus, the doctrine was established that a bank which paid a check, apparently drawn on it by one of its depositors, but in fact a forgery as to the drawer's signature, may not as a general rule charge the amount of the check against the depositor's account but must in the first instance bear the loss itself. ██ █ A bank is presumed to know the signature of its depositors. Zollmann, Bank and Banking, § 4112 at p. 362; Citizens Bank of Hattiesburg v. Miller, 194 Miss. 557, 11 So. 2d 457, Anno. 12 A. L. R. 1091. In accordance with this rule, this Court has held that a drawee bank which pays the

forged check, pays it at its peril. Deer Island Fish & Oyster Company v. First Nat. Bank of Biloxi, 166 Miss. 162, 146 So. 116.

The courts of various jurisdictions have been persistently beseiged since Price v. Neal with the question as to the right of the bank to recover money paid out to the person to whom the payment was made.

In 1896, the National Conference of State Boards of Commissioners for promoting uniformity of legislation in the United States, drafted a bill for the use of the states, codifying "The Negotiable Instruments Law". The bill was based upon, and largely copied from, the English Bills of Exchange Act, adopted by Parliament in 1882. Section 62 of the Negotiable Instruments Law is a copy of '§ 54 in the English Bills of Exchange Act. (Beutel's Brannan, Negotiable Instruments Law, 7th Edition, p. 913.) It has been repeatedly held that '§ 62 of the Negotiable Instruments Law was intended to adopt the doctrine set out in the case of Price v. Neal, supra, and applied as well to a payment as to an acceptance by the drawee of a forged bill or check. National Bank of Rolla v. First Nat. Bank of Salem, 141 Mo. App. 719, 125 S. W. 513; National Bank of Commerce v. Mechanics' Am. Nat. Bank, 148 Mo. App. 1, 127 S. W. 429, accord; Missouri Lincoln Trust Company v. Third Nat. Bank, 154 Mo. App. 89 (*semble*); State Bank v. First Nat. Bank, 87 Neb. 351, 127 N. W. 244, 29 L. R. A. (N.S.) 100; National Bank of Commerce v. Farmers, etc., Bank, 87 Neb. 841, 128 N. W. 522, S. C. sec. 30; State Nat. Bank v. Bank of Magdalena, 21 N. M. 653, 157 Pac. 498; Bergstrom v. Ritz-Carlton Co., 171 App. Div. 776, 157 N.Y. Supp. 959; State Bank v. Cumberland Savings, etc. Company, 168 N. C. 605, 85 S.E. 5, not citing the N.I.L.; Cherokee Nat. Bank v. Union Trust Company, 33 Okla. 342, 125 Pac. 464; First Nat. Bank v. Bank of Cottage Grove, 59 Ore. 388, 117 Pac. 293; Farmers' Bank v. Bank of Rutherford, 115 Tenn. 64,

88 S. W. 939, 112 Am. St. Rep. 817, not citing § 62; Figuers v. Fly, 137 Tenn. 358, 193 S. W. 117, S. C. § § 14, 66; U. S. v. Bank of New York, 219 Fed. 648, 134 C. C. A. 579. Most of the law writers consider that § 62 of the Negotiable Instruments Law incorporates the rule of Price v. Neal, supra. See Dean Ames in "The Doctrine of Price v. Neal", 4 Harv. L. Rev. by F. E. Cooper: "Forgery, Price v. Neal", 8 Ore. L. Rev. 872 (1929); by Ralph W. Aigler; "The Doctrine of Price v. Neal", 24 Mich. L. Rev. 809 (1926); and by Prof. Frederick C. Woodward in "The Risk of Forgery or Alteration of Negotiable Instruments", 24 Columbia L. Rev. 469. The Supreme Court of Louisiana changed its rule and followed Price v. Neal after the Legislature adopted the Negotiable Instruments Law. See Security State Bank & Trust Company of Beaumont v. First Nat. Bank of Shreveport, 199 So. 472 (La. App.); 15 Tulane L. Rev. 468.

Other courts have held that an acceptance must be in writing under the terms of § 132 of the Negotiable Instruments Law, and forged instruments paid by a drawee bank were not accepted, therefore it is said that § 62 had no application to the payment by drawee of their unaccepted bill. See Union National Bank v. Franklin Nat. Bank, 249 Pa. 375, 94 Atl. 1085; Colonial Trust Company v. National Bank of Western Pennsylvania, 50 Pa. Super. Ct. 510.

On the other hand, as shown above, most courts hold that payment of a check or bill is more than an acceptance, because the one is an obligation to pay and the other a discharge of the indebtedness represented by the bill. See: First National Bank v. Bank of Cottage Grove, 59 Ore. 388, 117 Pac. 293; Postal Telegraph-Cable Company v. Citizens Nat. Bank, 228 Fed. Rep. 601, 143 C.C.A. 123; Security State Bank & Trust Company of Beaumont v. First Nat. Bank of Shreveport, 199 So. 472.

Section 103, Miss. Code 1942, Rec. is an exact copy of § 62 of the original Negotiable Instruments Law, and is in the following language: "The accepter by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits:

"(1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

"(2) The existence of the payee and his then capacity to indorse."

After a careful reappraisal of the case of American Railway Express Agency v. Bank of Philadelphia, supra, we have reached the conclusion that § 103, Miss. Code 1942, Rec. incorporates into the Negotiable Instruments Law of this State the doctrine of Price v. Neal, supra, and we are therefore of the opinion that the holding of the majority of the court in that case should be reaffirmed by this Court.

## II

██ █ It is argued by the appellee, Deposit Guaranty, that under the ruling in Price v. Neal, supra, the overwhelming authority in the United States is to the effect that the drawee bank may recover where the person to whom the payment is made has been guilty of negligence in receiving and endorsing the check. Further the placing of the endorsement of First National, as above-described, upon the check was an element of gross negligence. It admitted, however, that the warranty of an endorser, set out under § 107, Miss. Code 1942, Rec., did not apply to the facts in this case. This Court had occasion to point out in Citizens Bank of Hattiesburg v. Miller, supra, that one who endorses a check warrants all following purchasers and holders in due course. ██ █ The warranty of an endorsement, however, does not apply to payment of a check by the drawee bank. The National Bank of Rolla v. First National Bank

of Salem, supra; National Bank of Commerce v. Farmers, etc. Bank, supra; Cherokee Nat. Bank v. Union Trust Company, supra; Farmers' Bank v. Bank of Rutherford, supra. See also M. Feitel House Wrecking Company, Inc. v. Citizens' Bank & Trust Company of Louisiana, 106 So. 292.

The question to be determined in this case, as we see it, is whether or not a drawee bank may be allowed to recover money paid on a forged drawer's signature where the person receiving payment was alleged to have been guilty of negligence in contributing to the payment, and whether or not the receiving bank was negligent in not exercising what the law regards as sufficient diligence in ascertaining the identity of a stranger who presented a check for payment.

██ ██ Since the doctrine in Price v. Neal, supra, is based upon the common-law rule that as between two innocent persons, the one who is in the best position to protect himself should suffer the loss, there must, of course, have been a loss. American Surety Company of New York v. Industrial Sav. Bank, 242 Mich. 582, 219 N.W. 689; First State Bank & Trust Company v. First Nat. Bank of Canton, 314 Ill. 269, 145 N.E. 382; Title Guarantee & Trust Company v. Haven, 214 N. Y. 468, 108 N. E. 819; Anno. 121 A.L.R. 1058. Cf. Central Nat. Bank of Richmond v. First and Merchants Nat. Bank of Richmond, 171 Va. 289, 198 S. E. 883. If the bank can reach the person by whom the forgery was committed or one who receives the money with knowledge of such fraud, its right of recovery is clear. United States Nat. Bank of Omaha v. Dunbar State Bank, 118 Neb. 624, 225 N.W. 753. ██ ██ It is also clear that any act of fraud or bad faith on the part of the holder in negotiating the instrument, will permit the drawee bank to recover from the holder, even after payment of a forged instrument. This is true because the doctrine itself is based upon the proposition that two innocent

persons are involved; moreover, the holder in such case would not have obtained title to the money. 4 Harv. Law Rev. 297.

There are a great many cases throughout the United States which have held that the drawee bank may recover from a holder where the holder has secured money on a forged check as a result of his own negligence. See Anno. 12 A. L. R. 1097; 71 A. L. R. 338; 121 A. L. R. 1058; Brady on Bank Checks, § 159, p. 243.

 ██ We are inclined, however, to follow that line of authorities which hold that the defendant-holder owed the plaintiff-drawee-bank no duty, imposed by custom or otherwise, to inquire into the genuinenss of the check. It has the right to take the risk of advancing the money upon it, if it were forged, or if for any other reason the bank was justified in refusing to pay it. The plaintiff's counter is the proper place at which to ascertain whether or not the check is genuine. If the plaintiff's officers and clerk omit to exercise the care and caution they would have used had the check been presented by some other institution or person, it has its agents to blame and not the defendant-holder. The cashing of a check by the bank upon which it is drawn effectually closes the transaction. See: Salt Springs Bank v. Syracuse Sav. Inst., 62 Barb. N.Y. 101; Fidelity & Deposit Company of Maryland v. Peoples Exchange Bank of Thorp, 270 Wis. 415, 71 N. W. 2d 290.

This rule is necessary, and is ably expressed by the textwriter in Anno. 12 A. L. R. 1091 in the following language; "Conditions would be intolerable if the retiring of commercial paper through its payment by the drawee did not close the transaction, but it was possible at an indefinite time in the future to reopen the matter, and recover the money, if the paper proved to have been forged. No one would dare handle it, and it would pass out of use regardless of its convenience or necessity as a part of the life of business. There is nothing in-

equitable in such a rule. If the paper comes to the drawee in the regular course of business, and he, having the opportunity of ascertaining its character, pronounces it valid and pays it, it is not only a question of payment under mistake, but payment in neglect of the duty which the commercial law places upon him, and the result of his negligence must rest upon him.''

We are now therefore of the opinion that the learned circuit judge was in error in permitting the drawee-bank, the Deposit Guaranty Bank & Trust Company, to recover from the First National Bank of Jackson, Mississippi, $4,200 on Count No. 1 of the declaration, and that judgment should be entered here in favor of appellant and cross-appellee, First National Bank of Jackson.

The judgment of the circuit court is affirmed wherein it held that the Deposit Guaranty Bank & Trust Company could not recover under Count No. 2 for $3,200. The judgment entered in favor of Deposit Guaranty Bank & Trust Company and against the First National Bank of Jackson, Mississippi, on Count No. 1 is reversed and judgment is here rendered in favor of the First National Bank of Jackson, Mississippi, on both counts of the declaration.

Affirmed in part and reversed in part.

*Lee, P. J., and Kyle, McElroy and Jones, JJ., concur.*