253 So.2d 828 (1971)
MISSISSIPPI BANK AND TRUST COMPANY
v.
COUNTY SUPPLIES AND DIESEL SERVICE, INC. and State Guaranty Bank.
No. 46322.
Supreme Court of Mississippi.
October 25, 1971.
Henley, Lotterhos & McDavid, Richard M. Edmonson, Jackson, for appellant.
Willis T. Matthews, Magee, for appellee.
J.T. Brown, Thomas, Price, Alston, Jones & Davis, Jackson, amicus curiae.
SUGG, Justice.
This is an appeal from the Chancery Court of Simpson County, Mississippi, by Mississippi Bank and Trust Company, appellant here and defendant and cross-complainant below, from a decree allowing recovery of $712.80 by County Supplies and Diesel Service, Inc., against Mississippi Bank and Trust Company and State Guaranty Bank, jointly and severally, and allowing recovery in the amount of $712.80 by State Guaranty Bank, appellee here and defendant and cross-complainant below, against Mississippi Bank and Trust Company in the amount of $712.80.
The case was tried on the following agreed statement of facts. On May 5, 1969, Simpson County, Mississippi, issued warrant number 2469 in the amount of $712.80 out of the public road fund for District one, claim number 277, payable to *829 County Supplies and Diesel Service, Inc., at the State Guaranty Bank of Magee, Mississippi, the County Depository. Between May 5, 1969, and August 20, 1969, the warrant was delivered to Ed Little without the knowledge or consent of County Supplies and Diesel Service, Inc., and without the knowledge or consent of either of the banks involved. Ed Little was employed by County Supplies and Diesel Service, Inc., as a commission salesman and had no real or apparent authority to perform any acts for his employer except solicit orders for business. Neither of the banks involved had any knowledge or information as to the facts of the employment or the authority of Ed Little.
On June 3, 1969, Ed Little opened a checking account at Mississippi Bank and Trust Company, being account number XX-XXXX-X, in the name of N.E. Little. On or about August 20, 1969, Little deposited the aforesaid county warrant number 2469 in his personal checking account at Mississippi Bank and Trust Company, less $100 cash. Without the knowledge, permission or authority of County Supplies and Diesel Service, Inc., Little endorsed said warrant, "County Supplies and Diesel Service for deposit to A/C # XX-XXXX-X."
Mississippi Bank and Trust Company made no inquiry as to whether or not Little had authority to endorse the check for and on behalf of County Supplies and Diesel Service, Inc., and the net proceeds of the warrant were credited to the account of Little, less the $100 cash paid to him.
County Supplies and Diesel Service, Inc., has never been, and was not at the time of the trial, a depositor or customer of State Guaranty Bank and said bank at no time has ever known or been familiar with the manner, method or authenticity of endorsements made by County Supplies and Diesel Service, Inc., or the signature, writing, authority or duties of Little.
Mississippi Bank and Trust Company properly endorsed the warrant by stamping on the back thereof its identification number and "pay any bank PEG (the abbreviations understood to mean and universally mean in the banking profession, `prior endorsements guaranteed') Mississippi Bank and Trust Company, Jackson, Mississippi." The warrant was sent through regular banking channels to State Guaranty Bank, the drawee bank, which, without further inquiry, promptly paid the same by debiting the account of public road fund for District one of Simpson County, Mississippi, on August 25, 1969.
Thereafter, County Supplies and Diesel Service, Inc., learned of the unauthorized endorsement and negotiation of the warrant by Little, and on May 7, 1970, made demand on Mississippi Bank and Trust Company by a letter from its attorney for reimbursement in the sum of $712.80. Mississippi Bank and Trust Company denied liability and County Supplies and Diesel Service, Inc., then made demand on State Guaranty Bank which likewise denied liability.
County Supplies and Diesel Service, Inc., then filed suit against both banks on June 23, 1970, and both banks denied liability and filed cross-bills against each other.
N.E. Little was originally made a party defendant to the case, but was dismissed when service of process could not be obtained.
Appellant assigns as error the following:
1. The trial court erred in entering a judgment against the appellant in favor of the County Supplies and Diesel Service, Inc.
2. The trial court erred in entering a judgment against the appellant on the cross-bill of the State Guaranty Bank.
The chancellor was eminently correct in holding that County Supplies and Diesel Service, Inc., had the right to recover from both State Guaranty Bank, the drawee bank, and Mississippi Bank and Trust Company, the collecting bank.
*830 The following Mississippi cases support the proposition that a payee may recover from the drawee bank directly on a forged or unauthorized endorsement of its name as payee: Commercial National Bank & Trust Co. of Laurel v. Hughes, 243 Miss. 252, 137 So.2d 800 (1962); Hart v. Moore, 171 Miss. 838, 158 So. 490 (1935); Masonic Benefit Association v. First State Bank, 99 Miss. 610, 55 So. 408 (1911).
It is likewise clear under Mississippi law that County Supplies and Diesel Service, Inc., was entitled to recover from Mississippi Bank and Trust Company under the authority of Thomas v. First National Bank of Gulfport, 101 Miss. 500, 58 So. 478 (1912).
In addition to this Mississippi case, the authorities from other jurisdictions are almost unanimous in support of the proposition that a bank that has obtained possession of a check under an unauthorized or forged endorsement of the payee's signature, and has collected the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner. 10 Am.Jur.2d Banks § 632 (1963) states as follows:
Although there are a few scattered cases to the contrary, the general rule established by nearly all courts is that a bank or other corporation which, or an individual who, has obtained possession of a check upon an unauthorized or forged indorsement of the payee's signature, and has collected the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained, and notwithstanding that the payee's signature was forged by his employee or agent.
Since the chancellor was correct in holding that County Supplies and Diesel Service, Inc., was entitled to recover from both banks, the question remains as to which bank should bear the loss.
Mississippi Bank and Trust Company states in its second assignment of error that the chancellor erred in entering a judgment against it on the cross-bill of State Guaranty Bank. This question has been put to rest by the Mississippi Uniform Commercial Code section 41A:4-207, Mississippi Code of 1942 Annotated (Supp. 1967) which provides the following:
(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and
* * * * * *
(2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
(b) all signatures are genuine or authorized; and
* * * * * *
The clear effect of this statute is that Mississippi Bank and Trust Company by transferring the warrant by its endorsement, after receiving consideration, warranted to State Guaranty Bank, who took the item in good faith, that all signatures of endorsers were genuine or authorized.
Before the enactment of the Uniform Commercial Code the general rule that a drawee bank which paid a check upon a forged endorsement could recover the money so paid the collecting bank was expressed *831 in 9 C.J.S. Banks and Banking § 358c (1938) as follows:
Generally, a drawee bank, having paid a check on which the payee's indorsement has been forged, may recover from a collecting or indorsing bank which has received the proceeds. Some authorities place the right of recovery from such bank on its warranty of the genuineness of all prior indorsements arising from its indorsement or negotiation of the check, while others place it on the ground that the drawee has paid money under a mistake of fact. If the bank receiving payment has expressly guaranteed the indorsement that turns out to be forged, the right of the drawee bank to recover under such guaranty is manifest, and the drawee's right of action accrues as soon as the money is paid; * * *
Also, in 10 Am.Jur.2d Banks § 634 et seq. (1963), the general rule is stated as being:
634. Generally.
It is an established general rule that where a bank pays a bank check to an indorser who derives title through a prior forged indorsement, it may recover back the money so paid, on discovery of the forgery, provided it makes or gives a timely demand or notice after the discovery of such forgery, and provided it has sustained a loss. If it can charge the payment to the account of the depositor, it has lost nothing and has no cause of action. Moreover, the right of the bank to recover back the money paid upon a check bearing a forged or unauthorized indorsement may be lost through negligence or through laches which prejudices the party receiving payment.
The right of the bank to recover from the indorser is based upon the principle that the indorsement of a check is an implied warranty of the genuineness of the previous indorsements. But the right of the bank to recover is not limited to an indorser. One who negotiates a check by delivery is liable for the amount of the check if it later develops that it was paid on a forged indorsement, and a drawee bank which has paid the holder of a check bearing the drawer's genuine signature and a forged indorsement can compel repayment from the holder even though he did not indorse the check.
A drawee bank which has paid a check bearing a forged indorsement prior to the signature of the recipient of payment may recover not only from such recipient but also from any indorser whose name appears on the check subsequent to the forged indorsement. The obvious purpose of this direct action on the part of the drawee bank against an indorser with whom the bank had no direct relationship is to avoid circuity of action. Otherwise, the bank would have to sue the recipient of the funds, who in turn would have to sue the prior indorser, who, under the uniform laws, has warranted the genuineness of the signature which has turned out to be a forgery.
§ 635. Recovery from, and rights of, collecting bank.
The courts have held that a collecting bank which indorses generally a check received by it for collection thereby guarantees the authenticity of the prior indorsements and, if a prior indorsement is a forgery, is liable to the drawee bank for the money paid to it by such bank. However, the collecting bank is not without recourse; it is entitled to look to its indorser for reimbursement. A collecting bank, upon being held liable for the payment of a check upon the forged indorsement of the payee's name, can in turn recover from the bank from which it had received the check and which, by its indorsement, had warranted the prior indorsements, and such bank can likewise recover from the indorser who deposited the check with it. It has been held that without proof that the bank issuing a cashier's check, on which the payee's indorsement had been forged, has paid or credited the amount of such check to the account of its depositor whose funds paid *832 for the check, the bank is entitled to recover the amount paid to a collecting bank, and the collecting bank is entitled to recover it from its depositor who took the check for value without notice of the forgery.
The Mississippi Supreme Court has long recognized this general rule and in the case of Williams v. Tishomingo Savings Institution, 57 Miss. 633 (1880), which involved a suit by a drawee bank against an endorser, the Court said:
The appellants, having indorsed to the appellee a bill of exchange, to which they claimed title through a forged indorsement, now insist that they incurred no responsibility by their indorsement, except a guaranty that the drawee would pay it on presentation. But the rule is well settled that an indorser warrants the genuineness of the prior indorsements on the bill, and also his title to the paper. Should it be ascertained, even after payment of the bill, that any of the indorsements are forged, the drawee can recover back the amount of the bill from the person to whom he paid it; and so each preceding indorser may recover from the person who indorsed the bill to him. The drawee is bound to know the signature of the drawer, but not of the indorser. The judgment, which is in accordance with these views, is Affirmed. (57 Miss. at 634).
In the case of Citizens Bank of Hattiesburg v. Miller, 194 Miss. 557, 11 So.2d 457 (1943), the Court held that a drawee bank could recover on a check paid under a forged endorsement the money so paid to one cashing the check. The Court stated:
We are therefore of the opinion that the undisputed proof was sufficient to establish the alleged forgery; that while the bank is required at its peril to know the signature of its depositor, it is not required to know the signature of the payee named in a check of its depositor, who is unknown to the bank and with whose signature it is not familiar, and under no duty to become familiar; and that the appellee as endorser, whether for accommodation or for value, guarantees the genuineness of previous endorsements upon a check which he negotiates. Section 2679, 2685, 2690, 2715, 2722, 2724, Code of 1930; and Williams v. Tishomingo Savings Institution, 57 Miss. 633. (194 Miss. at 567, 11 So.2d at 460).
The appellant cites Holmes County Bank & Trust Company v. Grenada Bank & Trust Company, 231 So.2d 505 (Miss. 1970) as the controlling authority. The Holmes case had approximately the same factual situation that exists in the instant case with the exception that the endorsement of the payee was typed on the back of the check in the Holmes case. The Court decided, as between the two banks, the drawee bank must bear the responsibility for determining the genuineness of all signature endorsements appearing on a check. In the Holmes decision the Court cited as controlling First National Bank v. Deposit Guaranty Bank & Trust Company, 247 Miss. 765, 156 So.2d 814 (1963). In the First National Bank case, both the signature of the drawer of the check and the endorsement were forged. The Court in that case, relying on a long line of precedents, said:
We are inclined, however, to follow that line of authorities which hold that the defendant-holder owed the plaintiff-drawee-bank no duty imposed by custom or otherwise, to inquire into the genuineness of the check. It has the right to take the risk of advancing the money upon it, if it were forged, or if for any other reason the bank was justified in refusing to pay it. The plaintiff's counter is the proper place at which to ascertain whether or not the check is genuine. If the plaintiff's officers and clerk omit to exercise the care and caution they would have used had the check been presented by some other institution or person, it has its agent to blame and not the defendant-holder. The cashing of a check by the bank upon which it is drawn effectually closes the transaction. * * *833 (247 Miss. at 777-778, 156 So.2d at 818-819).
The Court reaffirms the proposition that it is the duty of a bank to know the signature of its depositors and that the payment of an instrument by a bank on a forged signature of one of its depositors effectually closes the transaction, except that if the bank can reach the person by whom the forgery was committed or one who receives the money with knowledge of such forgery, it has the right to recovery.
Our Court has held in the case of Oxford Production Credit Association v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384 (1944), that a drawee bank is under no obligation to know the signature of endorsers of checks that it pays and stated as follows:
The (drawee) bank here was not negligent. It did not know the payees in the checks nor their signatures. They were obscure persons living in another county. As a practical proposition, the Bank could not, after receiving and before paying the checks, seek out the endorsers and verify their signatures. No bank could operate under such requirement. The rigid rule of duty upon a bank to know at all hazards the signature of its depositors, with whose signatures it is familiar, does not apply to endorsements of payees, with whose signatures they are seldom familiar. (196 Miss. at 72, 16 So.2d at 390).
The First National case, supra, also stated, "The warranty of an endorsement, however, does not apply to payment of a check by a drawee bank." This sentence is hereby overruled so that the liability between banks involving payment of an item on a forged or unauthorized endorsement will be clearly governed by the decision in the instant case.
We, therefore, overrule the case of Holmes County Bank and Trust Company v. Grenada Trust and Banking Company, supra. The learned chancellor was correct in his decision and the instant case is, therefore, affirmed.
Affirmed.
All Justices concur, except JONES, J., who took no part.
RODGERS, Presiding Justice (concurring):
I concur in the majority opinion for the sake of clarity, but I am constrained to point out that the sentence withdrawn from the opinion in First National Bank of Jackson, Mississippi v. Deposit Guaranty Bank & Trust Company, 247 Miss. 765, 775, 156 So.2d 814, 818 (1963), is taken out of context and thus changes the meaning of Paragraphs 3 and 4 of the opinion in that case.
The sentence withdrawn: "The warranty of an endorsement, however, does not apply to payment of a check by the drawee bank" refers to the preceding discussion in which we said: "It admitted, however, that the warranty of an endorser, set out under § 107, Miss.Code 1942, Rec., did not apply to the facts in this case." We were discussing at that point that an endorsement did not apply to the payment by the drawee bank on a forged signature of the maker. To make it perfectly clear, we cited cases holding that payment of a check by the drawee bank on an unauthorized endorsement did not amount to an acceptance under the Negotiable Instrument Law.
Since the reporter took this sentence out of context and since we are trying to make it perfectly clear, I have no objection to the withdrawal of the foregoing sentence in the First National Bank case, supra.
BRADY, Justice (concurring):
I concur in the opinion and judgment of the Court as expressed by Justice Sugg. However, since it reverses an opinion in Holmes County Bank & Trust Company v. Grenada Trust & Banking Company, 231 *834 So.2d 505 (Miss. 1970), which I wrote, and also that portion of the opinion in First National Bank of Jackson v. Deposit Guaranty Bank & Trust Company, 247 Miss. 765, 156 So.2d 814 (1963), upon which my opinion was based, some explanation is in order. I am compelled to say that the opinion considered only the forged endorsement which was involved in the latter case, where the Deposit Guaranty Bank & Trust Company, the payee bank, was held liable after it had honored and cashed the check on which the maker's name was also forged.
This confession does not justify or excuse the error, nor the monstrous oversight which also should be admitted. In 1968 the Holmes County Bank & Trust Company's contention was resolved and the suit was unnecessary for the reason that the Mississippi Legislature had enacted the Uniform Commercial Code which Justice Sugg's opinion points out absolves the Holmes County Bank & Trust Company and places the liability on the Grenada Trust & Banking Company. The attorneys involved also are guilty of this oversight. The Uniform Commercial Code, which has prescribed in a short period of time the commercial laws of this and other states, accomplishing that which the Law Merchant required three hundred years to evolve, may be of considerable benefit, as is hoped; however, it could also become a veritable shirt of Nessus to other judges, attorneys, clients, banks and to the commerce of Mississippi because of its mutations.
As Justice Jackson observed, so do I:
Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others. See Chief Justice Taney, License Cases, 5 How. 504, 12 L.Ed. 256, recanting views he had pressed upon the Court as Attorney General of Maryland in Brown v. State of Maryland, 12 Wheat. 419, 6 L.Ed. 678. Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, "The matter does not appear to me now as it appears to have appeared to me then." Andrews v. Styrap, 26 L.T.R. (N.S.) 704, 706. And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: "My own error, however, can furnish no ground for its being adopted by this Court * * *." United States v. Gooding, 12 Wheat. 460, 478, 6 L.Ed. 693. Perhaps Dr. Johnson really went to the head of the matter when he explained a blunder in his dictionary  "Ignorance, sir, ignorance." But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: "I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion." If there are other ways of gracefully and good naturedly surrendering former views to a better considered position, I invoke them all. (McGrath v. Kristensen, 340 U.S. 162 at 177-178, 71 S.Ct. 224 at 233, 95 L.Ed. 173 at 184 (1950).