374 So.2d 840 (1979)
FOREMOST INSURANCE COMPANY
v.
FIRST CITY SAVINGS & LOAN ASSOCIATION OF LUCEDALE.
No. 51395.
Supreme Court of Mississippi.
September 12, 1979.
*841 Bryan, Nelson, Allen, Schroeder & Backstrom, Vincent J. Castigliola, Jr., Pascagoula, for appellant.
A.M. Murphy, Lucedale, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This is an appeal from the Circuit Court of George County. The plaintiff, First City Savings & Loan Association of Lucedale (First City), sued Foremost Insurance Company for $4,500 based upon a draft issued by Foremost, payable to Elijah Bolton and General Electric Credit Corporation (GECC). In the lower court, a jury found for First City and assessed its damages at $4,500. Foremost has appealed.
Foremost issued this draft on February 6, 1976, in payment of a claim by its insured, Elijah Bolton, for a mobile home fire loss. At that time, GECC held a lien interest in the trailer in excess of the market value of the trailer, $4,500. Both Bolton and GECC were named payees on the draft.
On February 12, 1976, Bolton presented the check to First City, opened a savings account, deposited $2,000 in that account, and received a balance in cash of $2,500. *842 At the time of the transfer, the apparent endorsement of GECC had already been placed on the draft. Neither the teller nor anyone else with First City made any inquiry regarding the GECC endorsement. The draft was processed through banking channels, and was subsequently paid by Foremost. However, in October, 1976, Foremost learned that the endorsement of GECC was a forgery. The sum of $4,500 was charged back, through banking channels, to First City. First City then sued Foremost for payment of the draft.
The facts involved in this dispute were uncontradicted. At the trial, First City based its case solely upon the testimony of its president, Mr. J.F. Averett. He stated that based on his thirty-one years of commercial banking experience, there was nothing on the draft that would put one on notice that there was anything wrong with it. After the plaintiff rested, Foremost put on conclusive proof that the purported endorsement of GECC was either a forgery or an unauthorized signature.
After the evidence was presented, the lower court overruled Foremost's motion for a directed verdict, stating that whether the endorsement was genuine or forged was a factual issue for the jury to determine. It is the opinion of this Court that the motion for a directed verdict should have been granted by the lower court.
Mississippi Code Annotated section 75-3-307 (1972) places the burden of establishing the validity of a signature on the party claiming under it when the effectiveness of that signature is put in issue. In its answer, Foremost specifically denied that GECC's endorsement was genuine. Therefore, the burden of establishing the signature was on First City, as it was claiming under that signature. Although there is a presumption that a signature is genuine or authorized, the comments to the Uniform Commercial Code section state that the presumption applies only until some evidence is introduced which would support a finding that the signature is forged or unauthorized. After such evidence is presented the plaintiff is required to prove that it is authentic. Foremost put the plaintiff to its proof by the affidavit of forgery and the testimony of its witnesses. First City, then, had the burden of establishing the signature by a preponderance of the total evidence. A search of the record reveals no proof whatsoever that this signature was genuine. First City's only witness stated that he was not familiar with the endorsement of GECC. Further, First City made no effort to verify the endorsement when the draft was presented to it.
First City's failure to establish that it held the draft under a valid endorsement precludes recovery on the draft for two reasons:
First, First City had only the rights its transferor, Bolton, had in the draft. These rights were proved to be zero, because GECC had a lien on the entire proceeds of the instrument.
Mississippi Code Annotated Section 75-3-202 (1972) defines "negotiation" as the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement. The instrument in question is a draft payable to Elijah Bolton and GECC. Code section 75-3-116 states that the endorsement of both payees is needed to negotiate a draft if it is payable to two or more persons, not in the alternative.
Since the necessary endorsement of GECC was not on the instrument, the instrument was not negotiated. Without negotiation, First City could not become a holder, and, further, could not become a holder in due course. The transfer of the instrument from Bolton to First City vested in First City only the rights possessed by Bolton. Miss. Code Ann. § 75-3-201 (1972).
Under the above reasoning, First City had no right to collect on this draft. The same reasoning was used in FDIC v. Marine National Bank of Jacksonville, 431 F.2d 341 (5th Cir.1970). There, a bank took a draft payable to two payees without the endorsement of both. Because of this there was no negotiation, and the bank was not a holder *843 and thus could not become a holder in due course.
Secondly, recovery by First City is precluded because only First City was in a position to verify the endorsements on the draft when it took the draft. The loss should fall on that party who could have prevented it.
Mississippi Code Annotated section 75-3-417 (1972) states in part:
(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that
(a) he has good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title ...
First City was in breach of warranty on presentment, because First City did not have good title to the instrument or was not authorized to obtain payment on behalf of one who had good title to it. The warranty was broken because First City claims through the forged or unauthorized endorsement of a joint payee having an interest in the funds.
This reasoning was applied to a similar fact situation in First Federal Savings & Loan Association of New Bern v. Branch Bank & Trust Company, 282 N.C. 44, 191 S.E.2d 683 (1972). There the Savings & Loan took a draft on the endorsement of one of the payees and the forged endorsement of the other. That Court found that the Savings & Loan breached its warranty. It also held that the drawee of a draft is not held to know the signature of an endorser, whether payee or not. The drawee is under no duty to examine a draft to determine the genuineness of an endorsement but may rely on the warranty made to him by the person receiving payment that such person has title to the instrument.
Foremost, the drawee of the draft, relied on the warranty made by First City, and by every collecting bank which took the draft in the normal banking channels, that it had title to the instrument. In the case of Mississippi Bank & Trust Company v. County Supplies and Diesel Service, Inc., 253 So.2d 828 (Miss. 1971), this Court held that Mississippi Bank & Trust Company, which had obtained possession of the check under an unauthorized endorsement and collected the amount of the check from the drawee after warranting to the drawee that all signatures were genuine or authorized, was liable to the drawee for the amount of the check.
For the foregoing reasons, it is the opinion of this Court that the motion for a directed verdict should have been granted. Since there was no proof whatsoever that First City held the draft under a valid endorsement, but there was conclusive proof that it held under an unauthorized or forged endorsement, there was no question for the jury to decide. Therefore, as a matter of law, First City cannot recover on the draft.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.